**John R. TERRELL, Plaintiff,**

v.

**AMSOUTH INVESTMENT SERVICES, INC., and AmSouth Bank, Defendants.**

No. 8:02–CV–925–T–26TGW.

United States District Court, M.D. Florida, Tampa Division.

July 24, 2002.

Daryl James Brown, Andrew Froman, Jennifer G. Maglio, Brown, Clark, Christopher & DeMay, P.A., Sarasota, FL, for John R. Terrell, plaintiff.

James C. Polkinghorn, Suzanne K. Bogdan, Fisher & Phillips, LLP, Ft. Lauderdale, FL, for Amsouth Investment Services, Inc., Amsouth Bank, defendants.

## ORDER

LAZZARA, District Judge.

Before the Court is Defendant's Motion for Reconsideration (Dkt.14) and Plaintiff's Memorandum of Law in Opposition (Dkt.16). After careful consideration of the arguments made, the Court concludes that the motion should be denied. The Court, however, sua sponte vacates its order of July 3, 2002, and enters the following amended order on Defendant's Motion to Compel Arbitration (Dkt.8).

## AMENDED ORDER

Before the Court is Defendants' Motion to Compel Arbitration and supporting memorandum (Dkts. 8 and 9), Plaintiff's Memorandum in Opposition (Dkt.11), and the Request for Oral Argument (Dkt.12). After careful consideration of the arguments made and the entire file, the Court concludes that the motion should be denied.

### Background

Defendants AmSouth Investment Services, Inc. and AmSouth Bank (collectively AmSouth) hired Plaintiff John R. Terrell in July 2001. Upon his transfer to AmSouth's Sarasota office, Mr. Terrell uncovered widespread "churning" of the accounts by another AmSouth representative. When he reported these activities to management, he was told to keep it quiet. After several reprimands for voicing his findings, he continued to complain. Finally, on November 28, 2001, AmSouth terminated Mr. Terrell's employment in alleged retaliation for his objections to and refusal to participate in the churning of customers' accounts.

In May 2002, Mr. Terrell filed a complaint in state court pursuant to Florida's private Whistle–Blower Act, sections 448.101–105, Florida Statutes. Mr. Terrell sought an injunction to restrain AmSouth from continued violations of the Act, reinstatement to his position, reinstatement of his benefits and seniority rights, compensation for his lost wages, benefits, and other remuneration in addition to attorney's fees and costs. On grounds of diversity, AmSouth removed the action to this Court.

Mr. Terrell executed a Uniform Application for Securities Industry Registration or Transfer, Form U–4 (Form U–4) at the time he commenced employment with AmSouth. The Form U–4 contains the following arbitration clause on page 4 at paragraph 5:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Dkt. 9 at Exh. 1). The applicable SRO for Mr. Terrell is the National Association of Securities Dealers (NASD). By executing Form U–4, Mr. Terrell agreed to abide by the rules of the NASD.

Effective January 1, 1999, the NASD decided that it would not enforce pre-dispute arbitration agreements for claims al-

leging employment discrimination. The Code of Arbitration Procedure promulgated by the NASD reflects the amendment in section 10201 titled "Required Submission." Subsection b of section 10201 provides as follows:

> (b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

(Dkt. 11 at Exh A). The Code does provide, however, special rules applicable to statutory employment discrimination claims should the parties agree to arbitrate an employment discrimination dispute. *See* §§ 10210–10216.

Mr. Terrell also signed a Disclosure to Associated Persons Signing Form U–4, which provides in pertinent part:

> The Form U–4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U–4. You should read that clause now. Before signing the Form U–4, you should understand the following:
>
> (1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> (2) *A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated under NASD rules.* Such a claim may be arbitrated at the NASD only if the parties have agreed to arbitrate it, either before or after the dispute arose. The rules of other arbitration forums may be different.

(Dkt. 9 at Exh. 2) (emphasis added). Nothing in the file indicates that Mr. Terrell agreed to arbitrate a statutory employment discrimination claim.

### Argument

AmSouth seeks to compel Mr. Terrell to arbitrate his claim brought pursuant to Florida's Whistle–Blower Act. AmSouth argues that (1) the Federal Arbitration Act (FAA) applies to the arbitration agreement, (2) Mr. Terrell's claim is arbitrable, and (3) Mr. Terrell has thus far refused to arbitrate. With respect to the second argument, AmSouth contends that a claim under Florida's Whistle–Blower Act is not a claim for employment discrimination or sexual harassment, as those claims have been specifically exempted from the arbitration agreement. Moreover, AmSouth posits that Mr. Terrell cannot prove that Congress intended to preclude a waiver of judicial remedies for his particular statutory claims.[1]

■ Mr. Terrell agrees that the FAA applies to the arbitration agreement at issue. He disagrees, however, with the second and third arguments of AmSouth. Mr. Terrell contends that the crux of this dispute is whether the whistle-blower claim is arbitrable pursuant to the arbitration agreement found in Form U–4. He asserts that he did not agree to submit the whistle-blower claims to arbitration, because his claim is akin to a Title VII employment discrimination claim and has been likened to Title VII and anti-discrimi-

---

1. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

nation law by both the Eleventh Circuit and the courts of the Middle District.[2] He claims that his whistle-blower claim, as a claim of employment discrimination, falls within the category of claims excepted from arbitration.

Mr. Terrell also contends that arbitration of this claim will prevent him from obtaining his statutory rights. For example, he argues, in cases in which an arbitration agreement limits the ability to collect exemplary damages, the parties cannot receive relief equivalent to court remedies. Thus, Mr. Terrell's statutory remedies will be improperly limited to the extent that he will be unable to recoup his attorney's fees and costs, or to obtain injunctive relief or reinstatement, in NASD arbitration. Mr. Terrell notes that the changes in the NASD Code of Arbitration Procedure provide enhancements to the resolution of employment discrimination claims through expanded discovery and the use of arbitrators more highly skilled in the area of employment discrimination.

### Analysis

First, this Court agrees with the characterization of a Florida whistle-blower claim in *Rice–Lamar v. City of Fort Lauderdale*, —— So.2d ——, 2002 WL 985439 (Fla.App. May 15, 2002). Here, as in *Rice–Lamar*, Mr. Terrell's whistle-blower claim "is completely race and gender neutral … [and] therefore, separate and distinct from [a] discrimination claim or First Amendment protected speech claim." *See Rice–Lamar*, —— So.2d at ——, 2002 WL 985439, *5. A whistle-blower claim contains no element of proof of sex, race, color, national origin, religion, age, or disability-based discrimination.

A whistle-blower claim is totally retaliatory in nature. It is therefore susceptible to using the burden-shifting approach under Title VII and other anti-discrimination law.[3] The motivation for the retaliation in a whistle-blower claim, however, is not grounded in discriminatory animus.[4] Simply put, the employer seeks to terminate a whistle blower because he or she is exposing the employer to unwanted liability, bad publicity, or ill will from the community.

Not only is it unnecessary to prove discrimination in a claim under the whistle-blower statute, the objectives of the anti-discrimination statutes are not the same as those of whistle-blower legislation. The whistle-blower statute was enacted to protect "private employees who report or refuse to assist employers who violate laws enacted to protect the public." *See Golf Channel v. Jenkins*, 752 So.2d 561, 562 (Fla.2000) (quoting *Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 424 (Fla.1994)). The anti-discrimination statutes such as Title VII were originally enacted to eradicate discrimination against persons in the workplace for nothing other than the color of one's skin. Federal legislation has applied these principals of anti-discrimination through the Americans with Disabilities Act (disabilities), the Equal Pay Act (sex), the Age Discrimination in Employment Act (age), and Title VII (race, color, sex, national origin, and religion). *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Florida's Whistle Blower Act does not purport to abolish such prejudice.

---

**2.** *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945 (11th Cir.2000); *Gray v. Webco Gen'l Partnership*, 36 F.Supp.2d 1331, 1334–35 (M.D.Fla.1999). Mr. Terrell cites various other non-binding authorities for this proposition.

**3.** *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950–51 (11th Cir.2000) (Title VII retaliation analysis could be applied to causation issue in whistle-blower action).

**4.** At least discriminatory animus is not an element of a whistle-blower claim.

■ Having determined that Mr. Terrell's claim is not an employment discrimination claim excepted from arbitration, this Court must determine whether the NASD Code of Arbitration Procedure limits Mr. Terrell's statutory remedies. This Court must assume that Mr. Terrell did not agree to arbitrate the matter after the dispute arose. If he had, as Mr. Terrell points out, the Code provides special provisions beginning with section 10210 for statutory employment discrimination claims. The enhanced measures provided by those sections include a panel of arbitrators with special qualifications attuned to employment discrimination law and expanded discovery rights with pre-hearing depositions.

■ Mr. Terrell contends that the Code sections applicable to his claim do not empower the arbitrators with the ability to reinstate him or to award prevailing party attorney's fees and costs. Mr. Terrell refers this Court to *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998), which essentially holds that an arbitration agreement, to be enforceable, must enable the arbitrators to provide relief equivalent to court remedies. Florida law provides attorney's fees as of right to the prevailing party in a whistleblower action. *See* § 448.104, *Fla.Stat.* Other statutory remedies include reinstatement to the same or equivalent position and reinstatement of full fringe benefits and seniority rights. *See* § 448.103, *Fla.Stat.*

■ The law concerning the arbitrator's power or right to award attorney's fees has followed a tortuous path.[5] Although the Florida Supreme Court appears to have answered the question in *Turnberry Associates v. Service Station Aid, Inc.*, 651 So.2d 1173 (Fla.1995),[6] the district courts of appeal continue to interpret that answer differently. *See D.H. Blair & Co. v. Johnson*, 697 So.2d 912 (Fla.Dist.Ct.App.1997) (holding in NASD arbitration that parties' actions do not constitute express waiver of right to have court decide issue of attorney's fees), *review dismissed*, 728 So.2d 202 (Fla.1998), *cert. denied*, 526 U.S. 1067, 119 S.Ct. 1460, 143 L.Ed.2d 545 (1999); *Cassedy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 751 So.2d 143 (Fla.Dist.Ct. App.2000) (declining to adopt the reasoning and holding of *Blair*, and holding in NASD arbitration that parties' actions may constitute express waiver as required by *Turnberry* ). Without attempting to reconcile the applicable case law with regard to the issue of the NASD arbitrators' power to award attorney's fees in this particular case, the general rule appears to be that parties must explicitly waive the limitation set forth in section 682.11, Florida Statutes.[7] *See also Cray v. NationsBank*

---

**5.** It is difficult to make any general statements about the history of the arbitrators' lack of authority to award attorney's fees. *See Moser v. Barron Chase Sec., Inc.*, 783 So.2d 231 (Fla.2001) (reflecting the existence of "substantial confusion as to the procedure and appropriate forum for recovering attorney's fees incident to arbitration proceedings"). It appears for the most part that arbitrators seldom had the right to determine entitlement to attorney's fees, because the trial court held the exclusive right. *See Raymond, James & Associates, Inc. v. Wieneke*, 591 So.2d 956 (Fla.Dist.Ct.App.1991) (representing one situation in which an arbitrator did have the right to determine only entitlement to attorney's

fees); *see also Zate v. A.T. Brod & Co.*, 839 F.Supp. 27, 29–30 (M.D.Fla.1993) (citing *Wieneke* ).

**6.** *Turnberry* holds that "the parties by agreement may waive their entitlement to have the circuit court decide the issue of attorney's fees." *Turnberry,* 651 So.2d at 1175. The Florida Supreme Court wrote that "[t]he arbitrator has no authority to award fees absent an express waiver of this statutory right." *See Turnberry,* 651 So.2d at 1175.

**7.** Section 682.11, titled "Fees and expenses of arbitration," provides as follows:

*of N.C., N.A.,* 982 F.Supp. 850, 855 (M.D.Fla.1997) (citing *D.H. Blair* for the proposition that an arbitration panel has no authority to award attorneys' fees absent an express waiver of the limitation set forth in § 682.11).[8] Defendants have failed to establish that the Plaintiff explicitly waived his statutory right to have a court determine attorney's fees.

Even if Defendants can show that Plaintiff has waived his right for a court to determine attorney's fees, the Defendants have failed to establish that the arbitrators possess the powers necessary to implement the vast remedies available under the whistle-blower statute. The whistle-blower law provides the remedy of reinstatement to the same or equivalent position. Defendants have not convinced this Court that the arbitrators in the instant situation possess such broad authority.

Because Code sections applicable to Mr. Terrell limit or preclude the statutory remedies in this whistle-blower case, the arbitration clause in this particular instance is unenforceable. Even the possible argument to sever the invalid limitation from the rest of the arbitration agreement may not prove persuasive. *See Baron v. Best Buy Co., Inc.,* 79 F.Supp.2d 1350, 1355 (S.D.Fla.1999) (citing *Paladino* ). Accordingly, this Court cannot compel arbitration of the whistle-blower claim under the arbitration agreement in this case.

It is therefore **ORDERED AND ADJUDGED** that Defendants' Motion to Compel Arbitration (Dkt.8) is **DENIED.** The request for oral argument (Dkt.12) is

denied as moot. The stay previously imposed pending resolution of the motion to compel is lifted. The Defendants shall file their answers and defenses, if any, to the Plaintiff's complaint within 20 days of the date of the entry of this order.

**DONE AND ORDERED** at Tampa, Florida, on July 24, 2002.

---

Unless otherwise provided in the agreement or provision for arbitration, the arbitrators' and umpire's expenses and fees, together with other expenses, *not including counsel fees,* incurred in the conduct of the arbitration, shall be paid as provided in the award. (Emphasis added).

8. Although not addressing the issue before this Court, the Florida Supreme Court has

questioned the NASD's practice of discouraging disclosure of the basis of an award, because it "raises concerns as to the due process rights of the parties as it relates to a property interest in recovering attorney's fees." *See Moser v. Barron Chase Sec., Inc.,* 783 So.2d 231, 236 (Fla.2001).