Doreen PENBERTHY, Richard Penberthy, and Colette Penberthy, Plaintiffs,

v.

AT & T WIRELESS SERVICES, INC., Defendant.

No. 8:04–CV–2091–T–26TBM.

United States District Court, M.D. Florida, Tampa Division.

Feb. 4, 2005.

David Jay Federbush, Law Office of David J. Federbush, Bethesda, MD, Scott B. Albee, George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, Tampa, FL, for Plaintiffs.

Thomas P. Barber, Marty J. Solomon, Tampa, FL, Adam S. Tanenbaum, Orlando, FL, James Blaker Baldinger, Carlton Fields, P.A., West Palm Beach, FL, for Defendant.

## ORDER

LAZZARA, District Judge.

Before the Court are Defendant's Motion to Compel Arbitration and Memorandum of Law (Dkt. 10), Plaintiffs' Opposition (Dkt. 25), and Defendant's Reply Brief. (Dkt. 28). After careful consideration of the submissions of the parties, the Court concludes that the arbitration should be compelled.

### Nature of this Suit

Colette Penberthy and her parents, Doreen and Richard Penberthy, bring this lawsuit against Defendant for multiple violations of 47 U.S.C. § 222 of the Federal Communications Act (FCA), which section protects customer proprietary network information (CPNI).[1] (Dkt. 1). The Plaintiffs as customers of Defendant allege that Defendant as a telecommunications carrier had a statutory duty to protect the confidentiality of proprietary information relating to its customers. The proprietary information that Defendant released, without written demand or other request, contained phone numbers that Colette Penberthy had called on Defendant's wireless service and a new unlisted phone number for Colette which had been established on July 14, 2003. The information was released to David Bryan Lawson, an unrelated man, who had, since 2002, stalked, harassed, threatened, and physically harmed Colette. As a result of the release of this information to Lawson, a convicted felon,[2] Colette was placed in greater fear of Lawson, now having greater access to her whereabouts. Plaintiffs seek compensato-

[1]. "Customer proprietary network information" or CPNI is defined as follows:

(A) information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and (B) information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier; except that such term does not include subscriber list information."

47 U.S.C. § 222(h)(1).

[2]. On July 16, 2004, Defendant Lawson was sentenced pursuant to a plea of guilty for the offense of making a false statement to the United States Postal Service to divert Colette's mail to his address. This Court sentenced Lawson to one year in prison to be followed by thirty-six (36) months supervised release. *See* dockets 23 & 25 in Case No.

ry damages in an amount exceeding one million dollars to include all present and future "emotional pain and suffering and psychological injury" and out-of-pocket expenses as well as a reasonable attorney's fee.

### The Welcome Guide

Each customer of Defendant receives a Welcome Guide (Dkt. 13, Exh. 5), which is inserted in each phone box. On page 2 of the Welcome Guide, terms and conditions are set forth as follows:

> By using the device or service, accepting a benefit in exchange for committing to new Terms and Conditions or a new contract term, or by paying any amount billed to your account, you consent to the Terms and Conditions set forth in this guide. If you do not agree with these Terms and Conditions, do not use the device or service and notify us immediately to cancel service. A full copy of the Terms and Conditions can be found starting on page 21.

This paragraph appears again, almost verbatim, on page 21 in capital letters:

> IF YOU 1) USE THE SERVICE OR THE WIRELESS DEVICE, OR 2) ACCEPT ANY BENEFIT IN EXCHANGE FOR COMMITTING TO NEW TERMS AND CONDITIONS AND/OR A NEW CONTRACT TERM, OR 3) PAY U.S. ANY AMOUNT FOR THE SERVICE, YOU CONSENT TO THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT. IF YOU DO NOT AGREE WITH THESE TERMS AND CONDITIONS OR NEW CONTRACT TERM, DO NOT USE THE SERVICE OR DE-VICE AND NOTIFY U.S. IMMEDIATELY TO CANCEL SERVICE AND/OR RETURN THE EQUIPMENT OR OTHER BENEFIT RECEIVED.

Under another section of the Terms and Conditions titled "Charges/Payments/Defaults," the following sections recognize the Plaintiffs' rights with respect to CPNI:

> g. **Account Information.** Any person able to provide your name, the last four digits of your Social Security number (or for business customers other information we deem sufficient), and the Number is authorized by you to receive information about and make changes to your account, including adding new Service....

> h. **CPNI Consent.** Under federal law, you have a right, and we have a duty, to protect the confidentiality of information about the amount, type, and destination of your wireless service usage and the location of your device on our network (CPNI) when you use voice service. You consent to us sharing your CPNI with AT & T Wireless affiliates who provide communications-related services, joint venture partners and independent contractors, to develop or bring to your attention communications-related products and services. This consent survives the termination of your Service and is valid until you revoke it....

The Welcome Guide contains an arbitration clause, which is found on pages 29 and 30 and states in pertinent part:

> 5. RESOLUTION OF DISPUTES.

> PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS

---

8:04–cr–70–T–26TBM. Plaintiffs allege that Lawson is presently the subject of felony information filed in state court in Pasco County for stalking Colette and for unlawful sexual activity with a minor. (Dkt. 1 at paras. 43–45).

RIGHTS THAT YOU MAY OTHERWISE HAVE. IT PROVIDES FOR RESOLUTION OF MOST DISPUTES THROUGH ARBITRATION INSTEAD OF COURT TRIALS AND CLASS ACTIONS. ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. THIS ARBITRATION CLAUSE SHALL SURVIVE TERMINATION OF THIS AGREEMENT.

a. Binding Arbitration. This provision is intended to be interpreted broadly to encompass all disputes or claims arising out of our relationship. **Any dispute or claim,** including those against any of our subsidiary, parent or affiliate companies, arising out of or relating to this Agreement, our Privacy Policy or the Service or any equipment used in connections with the Service (**whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory**) will be resolved by binding arbitration except that (1) you may take claims to small claims court if they qualify for hearing by such a court, or (2) you or we may choose to pursue claims in court if the claims relate solely to the collection of nay debts you owe to us.

b. Arbitration Procedures. . . . The arbitration of any dispute or claim shall be conducted in accordance with the American Arbitration Association ("AAA") under the Wireless Industry Arbitration Rules ("WIA Rules"), as modified by this Agreement. The WIA Rules and information about arbitration and fees are available upon request from the AAA online at *www.adr.org.* . . . **An arbitrator may award any relief or damages (including injunctive or declaratory relief) that a court could award, except an arbitrator may not award**

**relief in excess of or contrary to what this Agreement provides** and may not award relief on a consolidated, class wide or representative basis. In any arbitration applying the WIA Rules applicable to large/complex cases, the Arbitrators must also apply the Federal Rules of Evidence, and the losing party may have the award reviewed in accordance with the review procedures set forth in the WIA Rules. Judgment on any arbitration award may be entered in any court having proper jurisdiction. **If any portion of this arbitration clause is determined by a court to be inapplicable or invalid, then the remainder shall still be given full force and effect.**

c. Costs of arbitration. For claims of less than $1,000, you will be obligated to pay $25 and we will pay all other administrative costs and fees. For claims over $1,000 but under $75,000, you will be obligated to pay your share of the arbitration fees, but no more than the equivalent court filing fee for a court action filed in the jurisdiction where your billing address is located. For arbitrations in excess of $75,000, all administrative fees and expenses of arbitration will be divided equally between you and us. In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration.

(Emphasis in bold added). Section 5(b) above refers to an arbitrator's inability to award "relief in excess of or contrary to what this Agreement provides," which incorporates the following Limitations paragraph of the Terms and Conditions found at page 28 of the Welcome Guide:

4. LIMITATIONS. The parties intend that the limitations on liability, warranty

—

and damage awards provided for in this Agreement will apply to the fullest extent allowed by law. Some jurisdictions do not allow the exclusion of certain warranties or the waiver, limitation or exclusion of liability for punitive, incidental or consequential damages, or for intentional or willful conduct in some circumstances. **To the extent that any of these limitations are not permitted by applicable law, they will not apply to you.**

a. Limitation of Liability.... OUR LIABILITY AND THE LIABILITY OF ANY UNDERLYING CARRIER FOR ANY FAILURE OR MISTAKE SHALL IN NO EVENT EXCEED OUR SERVICE CHARGES DURING THE AFFECTED PERIOD. WE AND ANY UNDERLYING CARRIER ARE NOT LIABLE FOR ANY INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES SUCH AS LOST PROFITS. **YOU AND WE BOTH WAIVE TO THE FULLEST EXTENT ALLOWED BY LAW, ANY CLAIMS TO RECOVER INCIDENTAL, PUNITIVE AND CONSEQUENTIAL DAMAGES. WE AND ANY UNDERLYING CARRIER ARE NOT LIABLE FOR (I) ECONOMIC LOSS OR INJURIES TO PERSONS OR PROPERTY ARISING FROM USE OF THE SERVICE, THE DEVICE OR ANY EQUIPMENT USED IN CONNECTION WITH THE DEVICE UNLESS CAUSED BY OUR SOLE AND GROSS NEGLIGENCE, OR (ii)** THE INSTALLATION OR REPAIR OF THE DEVICE BY ANY PARTIES WHO ARE NOT OUR EMPLOYEES. THIS PARAGRAPH SHALL SURVIVE TERMINATION OF THIS AGREEMENT.

(Emphasis in bold added). The statutory remedies found in Title 47, United States Code, Chapter 5, § 206, provide that carriers are liable "for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee."

### Issues

The issue is whether the severability provision in the arbitration agreement permits or requires this action to be arbitrated, despite the discrepancy between the statutory remedies and the terms of the arbitration agreement. Plaintiffs contend that part of the agreement limits their available statutory remedies under the FCA and is therefore unenforceable. Defendant argues that the severability provision requires this Court to leave the issue of limitation of statutory remedies for the arbitrator.

### Analysis

The Supreme Court has enunciated certain "gateway matters" for a court, as opposed to an arbitrator, to decide—"particular arbitration-related matter[s] (in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary)." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (quoting *AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The limited gateway matters for consideration by a court are the validity of the arbitration clause or its applicability to a certain type of controversy. *See Green Tree*, 539 U.S. at 452–53, 123 S.Ct. 2402, citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Arbitrators, on the other hand, are well-equipped to consider matters of contract interpretation and arbitration procedures. *Id.*

■ The issues of whether the arbitration agreement reaches a plaintiff's claims [3] and whether the arbitration agreement is invalid because of its remedial restrictions, are both gateway matters. *See Anders v. Hometown Mortgage Servs., Inc.,* 346 F.3d 1024, 1027 (11th Cir.2003) (holding that contentions that (1) agreement to arbitrate containing remedial limitations prohibits entitlement to full remedies afforded by federal statutes under which claims arise and therefore must not reach the claims and that (2) agreement to arbitrate is invalid because of its remedial restrictions, are gateway matters). In this case, as in *Anders,* Plaintiffs argue that the arbitration agreement is invalid because of its remedial restrictions. Specifically, Plaintiffs urge that the arbitration agreement is invalid because it contains provisions that will defeat the remedial purposes of the FCA, such as the capping of damages to service charges for the given period, the preclusion of recovery for emotional and psychological suffering and consequential damages, and the preclusion of full recovery of attorney's fees.

■ The Eleventh Circuit in *Anders* discusses *Paladino v. Avnet Computer Techs., Inc.,* 134 F.3d 1054 (11th Cir.1998), and makes the critical observation that implicit in the *Paladino* decision is the fact that either the agreement did not contain a severability clause or severability was never raised. *See Anders,* 346 F.3d at 1031–32. There is no question that in this case a severability clause exists.[4] The severability clause provides that "[i]f any portion of this arbitration clause is determined by a court to be inapplicable or invalid, then the remainder shall still be given full force and effect." [5] When determining the effect of the severability provision, state law must be consulted. *See Anders,* 346 F.3d at 1031–32, citing *Paladino,* 134 F.3d at 1061.

■ At least one Florida appellate court has recently held that "the determination of whether an arbitration provision is unenforceable because it limits statutory remedies is for the arbitrator, not the trial court." *See Rollins, Inc. v. Lighthouse*

---

**3.** As to the first contention in *Anders,* the agreement did not permit the arbitrator to award punitive damages, treble damages, penalties, or attorney's fees—all available under the pertinent federal statutes. Anders argued that because the arbitrator could not award the full relief permitted by the federal statutes, the parties "must not have intended for the arbitration agreement to cover these statutory claims." *Anders,* 346 F.3d at 1028. The Eleventh Circuit, however, dismissed this argument by citing the language of the agreement that provided for resolution of any and all disputes by arbitration. In this case, as in *Anders,* the arbitration agreement also provides that any disputes must be arbitrated as evidenced by the following language: "Any dispute or claim, . . ., arising out of or relating to this Agreement, our Privacy Policy or the Service or any equipment used in connections with the Service (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration." The agreement also

gives broad power to the arbitrator to "award any relief or damages (including injunctive or declaratory relief) that a court could award, except an arbitrator may not award relief in excess of or contrary to what this Agreement provides."

**4.** Plaintiffs cite this Court's own decision of *Terrell v. AmSouth Inv. Services, Inc.,* 217 F.Supp.2d 1233 (M.D.Fla.2002). *Terrell,* however, was decided prior to *Anders,* and there is no indication that the contract in *Terrell* contained a severability clause or that the parties argued severability.

**5.** The remedial section of the arbitration agreement deals with the recovery of incidental, punitive and consequential damages as well as recovery for economic loss or injuries. Furthermore, under the "costs" section, it does not permit the recovery of the plaintiff's attorney's fee, which is contrary to the FCA.

*Bay Holdings, Ltd.,* No. 2D03–4792, 2005 WL 26638, * 1 (Fla. 2d DCA 2005).[6] While not deciding the issue of the effect of a severability clause on an agreement to arbitrate, the Florida Supreme Court has even more recently written on the roles of the arbitrator and the court in determining whether the agreement to arbitrate is valid in the first instance. *See Cardegna v. Buckeye Check Cashing, Inc.,* No. SC02–2161, 2005 WL 106966 (Fla. Jan. 20, 2005). In holding that Florida courts, and not an arbitrator, must first determine the legality of a contract before compelling an arbitration clause in the same contract, the Florida Supreme Court articulated that "there are no severable, or salvageable, parts of a contract found illegal and void under Florida law." *Id.* at *4.

Having reviewed these Florida cases and others, and in keeping with the dictates of the Eleventh Circuit, this Court must make a determination of whether Florida law favors severability—not whether Florida courts hold that the arbitrator or the court should decide the issue of severability. In this vein, the case of *Healthcomp Evaluation Servs. Corp. v. O'Donnell,* 817 So.2d 1095 (Fla. 2d DCA 2002), is instructive. *Healthcomp* involved an appeal from an order denying a motion to compel arbitration pursuant to an arbitration clause in a contract for the sale of assets of a business. In the arbitration clause, the parties agreed to forego any appeal or review of the arbitration award. The trial court found this clause "offensive."

The contract for the sale of assets in *Healthcomp* also contained a severability clause, which provided that all covenants in the contract were severable and in the event any of the covenants were held invalid, then the remaining provisions of the contract "shall remain in full force and effect." The severability clause further stated that the contract "shall not fail because any part or any clause hereof shall be held indefinite or invalid." Despite the severability clause, the trial court found the entire agreement to arbitrate invalid based on the agreement to forego review of an arbitration award.

The appellate court in *Healthcomp* reversed the trial court, holding that the trial court erred "when it failed to sever the unenforceable sentence[7] from the arbitration clause." The *Healthcomp* court determined the severability clause to be valid, finding no "interdependence between the arbitration clause and the remaining clauses of the agreement." "The arbitration clause itself was divisible and the offending sentence contained therein could have been severed without affecting the intent of the parties." *Healthcomp,* 817 So.2d at 1098, citing another Florida appellate case.

■ Based on a review of Florida case law, the Court finds that Florida courts support giving credence to a contract's severability clause if a portion of the arbitration provision is invalid and if the contract is capable of enforcement absent the invalid provision. Thus, the severability clause in the instant case permits the limitation of statutory remedies and the claims to be considered by an arbitrator.

*PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003).

6. It should be noted that the United States Supreme Court has declined to specifically answer the question of whether the court or the arbitrator should decide if remedial limitations render an agreement unenforceable.

7. The unenforceable sentence is the one prohibiting an appeal.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Compel Arbitration (Dkt. 10) is **GRANTED**. All proceedings in this case are stayed, and the Clerk is directed to administratively close this case pending the parties' completion of the arbitration process. The parties' shall report the outcome of the arbitration process to the Court within 10 days of its completion.