[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 25, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-14448

_____

D. C. Docket No. 02-00070-CV-C-W

JONAH P. ANDERS,
and all others similarly situated,

Plaintiff-Appellant,

versus

HOMETOWN MORTGAGE SERVICES, INC.,
MORTGAGE BROKERS GROUP OF TUSCALOOSA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 25, 2003)**

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and CARNES*,
District Judge.

_____
        *Honorable Julie E. Carnes, United States District Judge for the Northern District of
Georgia, sitting by designation.

CARNES, Circuit Judge:

This is another arbitration dispute in which the parties are litigating whether or not they should be litigating. The familiar scenario is that the parties agree in writing to arbitrate any disputes between them, but then one party files a lawsuit taking the position that the agreement to arbitrate is inapplicable, invalid, or unenforceable for one reason or another. Here the plaintiff contends the agreement to arbitrate does not cover his federal statutory claims, is unenforceable because he cannot afford to arbitrate, and is invalid because it does not afford him the remedial relief to which he is entitled under the statutes.

Based on the agreement, the district court compelled arbitration and dismissed the lawsuit. We conclude that the agreement is broad enough to cover the dispute, any problem involving whether the plaintiff can afford the cost of arbitration is no problem in light of the defendant's stipulation to pay the plaintiff's costs of arbitration, and because any impermissible restrictions on the remedies are severable from the other parts the agreement itself is not invalid. As a result, we affirm the district court's decision to send the case to arbitration where, if the plaintiff establishes his right to relief, the arbitrator will decide the remedies issues.

# I.

To finance the purchase of his home, Anders borrowed funds from Hometown Mortgage Services in a transaction brokered by Mortgage Brokers Group of Tuscaloosa. At the closing, Anders signed a number of documents including an arbitration agreement.[1] The agreement specifically refers all disputes between Hometown Mortgage and Anders to arbitration. And it limits the remedies available to Anders, stating that "the arbitrator(s) may not award punitive damages, treble damages, penalties, or attorney's fees." Just in case that or some other part of the agreement does not hold up, the agreement includes a severability or savings clause specifying that if a court declares part of the agreement invalid or unenforceable, the remainder of the agreement will not be affected.

Anders sued both Mortgage Brokers and Hometown Mortgage alleging that they violated the Real Estate Settlement Procedures Act (RESPA) and the Truth in Lending Act (TILA). Mortgage Brokers failed to respond to the complaint, and the district court issued a default against it. Hometown Mortgage, on the other hand, filed a motion to compel arbitration based on the arbitration agreement. In response, Anders asserted that he could not afford arbitration, to which Hometown

---

[1]Anders actually signed two documents pertinent to this appeal: The arbitration agreement and a mortgage rider. The documents include materially identical remedial restrictions and severability clauses. For the sake of simplicity, we will generally refer to both of those documents as the arbitration agreement.

Mortgage replied with a stipulation that if the trial court found Anders unable to afford the costs associated with arbitration and found that his inability to pay voided the agreement, Hometown Mortgage would bear the costs of arbitration that Anders otherwise would have had to pay. Based on that stipulation, the district court issued an order compelling arbitration and dismissing the case without prejudice. Anders then brought this appeal.

## II.

Anders presents three reasons why he should not be forced to arbitrate his claims against Hometown Mortgage: the agreement to arbitrate does not reach his claims; the agreement is unenforceable because he cannot afford arbitration; and the agreement is invalid because of its remedial restrictions. Each of these contentions, through which Anders attempts to avoid arbitration entirely, falls within the category of "gateway matters" which the Supreme Court has instructed us that courts and not arbitrators should decide, Green Tree Financial Corp. v. Bazzle, 539 U.S. __, __ 123 S. Ct. 2402, 2407 (2003) (holding that courts must decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S. Ct. 588, 592 (2002) ("[A] gateway dispute

4

about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.").

Anders first contention is that because the agreement to arbitrate contains remedial limitations, and because he is entitled to the full remedies afforded by the federal statutes under which his claims arise, the agreement must not reach the disputes involving his claims. TILA and RESPA do provide for relief and remedies that may be excluded by the agreement, which does not permit the arbitrator to award punitive damages, treble damages, penalties, or attorney's fees. For example, Anders alleges that Hometown Mortgage paid referral fees or kickbacks to Mortgage Brokers, in violation of Section 8 of RESPA, 12 U.S.C. § 2607(a), for which the statute provides treble damages, id. § 2607(d). Anders also alleges that Hometown Mortgage failed to disclose certain finance charges and understated the annual percentage rate it charged, all in violation of TILA, 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. §§ 226.4, 226.18, and 226.22. TILA entitles successful plaintiffs to statutory damages as well as any actual damages. 15 U.S.C. § 1640(a). Anders seeks attorney's fees, which both TILA and RESPA allow prevailing plaintiffs to recover, TILA, 15 U.S.C. § 1640(a)(3); RESPA, 12 U.S.C. § 2607(d)(5).

Anders contends that because the arbitrator cannot award the full relief that is permitted by the statutes, the parties must not have intended for the arbitration agreement to cover these statutory claims. The clear words of the agreement, however, foreclose that position. It says:

> [A]ny action, dispute, claim, counterclaim or controversy ("Dispute" or "Disputes"), between us, including any claim based on or arising from an alleged tort, shall be resolved in Birmingham, Alabama by ARBITRATION as set forth below. The term "Disputes" shall include all actions, disputes, claims, counterclaims or controversies arising in connection with the Loan, Note or the Security Instrument, any collection of any indebtedness owed to Lender, any security or Collateral given to Lender, any action taken (or any omission to take any action) in connection with any of the above, any past, present and future agreement between or among us (including the Security Instrument), and any past, present or future transactions between or among us.[2]

The agreement could not have been broader. Any disputes means all disputes, because "'any' means all." Merrit v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997) (citing United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997)). And so, of course, does the word "all" itself. The agreement reaches this dispute because the agreement reaches any and all disputes.

Having decided that gateway issue against Anders, we turn to his next contention, which is that the agreement should not be enforced because he cannot afford the costs of arbitration. It may be that an agreement to arbitrate is

---

[2]The quotation is from the arbitration agreement. The mortgage rider contains materially, although not literally, identical language. See note 1, above.

unenforceable if the cost of arbitration precludes the effective vindication of statutory rights in arbitration. <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 90, 121 S. Ct. 513, 522 (2000). But "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." <u>Id.</u> at 92, 121 S. Ct. at 522. Anders submitted an affidavit in which he said: "I simply cannot afford to pay the $3,500.00 to $6,000.00 that I have determined will be required to arbitrate my claims," and in that affidavit he substantiated his inability to do so by detailing his assets, debts, income, and expenses; he even attached a copy of his credit report. That is not enough, in view of the circumstances.

The agreement provides that arbitration will be in accordance with the American Arbitration Association Rules for Commercial Financial Disputes. Those rules specify that "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." AAA Rules for Commercial Financial Disputes, Rule 46. They also provide that all other expenses of the arbitration, including travel, costs of witnesses, and fees of the arbitrator, while ordinarily "borne equally by the parties" may be assessed by the arbitrator against any specified party. <u>Id.</u> Rule 47. We need not decide if those provisions of

the AAA rules alone are enough to preclude a finding that arbitration would be prohibitively expensive for Anders, because there is more.

The more is that Hometown Mortgage stipulated in the district court that if Anders was unable to pay for arbitration and his inability would preclude arbitration, Hometown Mortgage "would agree to bear the administrative fees which Anders would otherwise be required to pay in the institution of an arbitration action." At oral argument before us, Hometown Mortgage's counsel said the stipulation means her client will pay "what we need to pay to make it fair for Mr. Anders," and the arbitrator will decide how much Hometown Mortgage should pay of Anders' costs. Counsel agreed that Hometown Mortgage's stipulation should be construed expansively, and we interpret her representations to us to mean that no declaration of invalidity because of prohibitive costs is necessary before her client will help with Anders' costs.[3] Given Hometown Mortgage's willingness to bear the costs of arbitration that Anders is unable to afford (as the arbitrator determines), it follows that Anders has not demonstrated that arbitration would be prohibitively expensive for him.[4]

---

[3]Counsel for Hometown Mortgage did say at oral argument that her client's stipulation does not cover Anders' attorney's fees, but that is not what the Green Tree issue which we are discussing is about.

[4]Our decision of this issue is consistent with our recent decision in Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255 (11th Cir. 2003), where we rejected the plaintiff's contention that a "loser-pays" attorney's fees provision invalidated an agreement to arbitrate. Id.

Anders' final contention is that the arbitration agreement cannot be enforced since it contains provisions that are invalid because they cut down remedies otherwise available to him under the federal statutes upon which his claims are based. This contention implicates general principles of arbitration law, such as the Federal Arbitration Act's pronouncement that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has interpreted that statutory pronouncement as "a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). That is entirely understandable since the FAA was enacted "'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'" EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S. Ct. 754, 761 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24, 111 S. Ct. 1647, 1651 (1991)).

---

at 1261-62. Applying Green Tree, we concluded that because the plaintiff might prevail in arbitration and incur no attorney's fees, he had not met his burden of showing prohibitive costs of arbitration. In Musnick, as in this case, the Green Tree issue determined the enforceability of the agreement to arbitrate and was therefore a gateway issue to be decided by the court and not the arbitrator.

Agreements to arbitrate are akin to forum-selection clauses. Cunningham v. Fleetwood Homes of Ga., Inc., 253 F.3d 611, 617 (11th Cir. 2001) (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S. Ct. 2449, 2457 (1974)). A party agreeing to arbitrate statutory claims "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 3354 (1985). Federal statutory claims are as a rule arbitrable, see Gilmer, 500 U.S. at 28, 111 S. Ct. at 1653, and claims under TILA and RESPA are no exception, see Bowen v. First Family Fin. Servs. Inc., 233 F.3d 1331, 1338 (11th Cir. 2000) (concluding that nothing in the text or legislative history of TILA establishes that plaintiffs have a non-waivable right to pursue an individual lawsuit as distinguished from pursuing arbitration); Blount v. Nat'l Lending Corp., 108 F. Supp. 2d 666, 669 (S.D. Miss. 2000) (holding that RESPA claims are arbitrable). The parties in this case do not disagree about TILA and RESPA claims being arbitrable but about whether the arbitration agreement they signed is invalid on the ground that it contains provisions which would defeat the remedial purposes of RESPA and TILA.

Anders relies upon Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054 (11th Cir. 1998).[5] That decision involved an employer's appeal of a district court's denial of its motion to compel arbitration in an employment discrimination action. The agreement in that case referred to arbitration all employment disputes, but specified that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." Id. at 1060. Because Title VII damages are not contract damages, we concluded that the arbitration clause denied the employee "the possibility of meaningful relief in an arbitration proceeding." Id. at 1062. The arbitration clause was invalid, we said, because "the arbitrability of [statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies." Id. (citing Gilmer, 500 U.S. at 28, 111 S. Ct. at 1653). The arbitration clause in Paladino did not do that, so we pronounced it invalid. With no valid agreement to arbitrate, the parties were left to fight it out in court.

Other circuits have handled issues involving remedy restriction provisions in arbitration agreements differently than we did in Paladino. They let the arbitrator decide in the first instance whether remedial limitations are permissible. See, e.g.,

_____

[5]Anders' additional reliance upon Perez v. Globe Airport Sec. Servs., 253 F.3d 1280 (11th Cir. 2001), is misplaced, because we have vacated our decision in that case, 294 F.3d 1275 (11th Cir. 2002), and a vacated decision has no effect whatsoever, United States v. Sigma Int'l, 300 F.3d 1278, 1280 (11th Cir. 2002).

Hawkins v. Aid Association For Lutherans, 338 F.3d 801, 807 (7th Cir. 2003)("Because the adequacy of arbitration remedies has nothing to do with whether the parties agreed to arbitrate or if the claims are within the scope of that agreement, these challenges must first be considered by the arbitrator."); Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., 334 F.3d 721, 726 (8th Cir. 2003) ("[T]he party seeking to void the provisions [in an arbitration agreement] waiving punitive damages and other relief ha[s] to address those arguments to the arbitrator."); Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1086 (8th Cir. 2001) (declining to follow Paladino, and stating "[w]hether federal public policy prohibits an individual from waiving certain statutory remedies is an issue that may be raised when challenging an arbitrator's award"); MCI Telecomms. Corp. v. Matrix Comms. Corp., 135 F.3d 27, 33 n.12 (1st Cir. 1998) (holding that an argument that an arbitration agreement is invalid because it forecloses certain remedies otherwise available "must be brought to the arbitrator because it does not go to the arbitrability of the claims but only to the nature of available relief"); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 232 (3d Cir. 1997) ("The availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard. Thus, availability of punitive damages cannot enter into a decision to compel arbitration."). But see Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th Cir. 2003) (affirming the denial of a motion to compel

12

arbitration and stating that: "[b]ecause the remedies limitation [in the arbitration agreement] improperly proscribes available statutory remedies, . . . it is substantively unconscionable").

The difference between those decisions of the First, Third, Seventh, and Eighth Circuits and our Paladino decision is that in those circuits an agreement containing a provision that impermissibly precludes or limits statutorily authorized remedies is still a valid agreement pursuant to which the case is to be sent to arbitration, where the arbitrator decides the remedies issues along with all the others. Under Paladino, it is not an issue for the arbitrator, at least not under the facts and circumstances of that decision.

Of course we have no need to decide whether, in the circumstances it involved, Paladino is the better approach; that decision is the law of this Circuit regardless of our view of it. See Smith v. GTE Corp., 236 F.3d 1292, 1301-02 (11th Cir. 2001); United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc). However, while we must apply the Paladino decision to facts and circumstances sufficiently similar to those under which it arose, we are not obligated to extend the decision to different situations. See Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207 (11th Cir. 2003) ("[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."). The prior panel precedent rule obligates us to follow the holdings of

13

an earlier decision, United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997) (per curiam), but "[t]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision," United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (per curiam) (citation and internal marks omitted).

This case is different from Paladino in a way that leads us to conclude that even if the remedial restrictions within the arbitration agreement in this case are invalid, as Anders argues, the parties must still arbitrate. Necessarily implicit in the Paladino decision is the proposition that the invalid remedial restrictions were not severable from the remainder of the arbitration agreement in that case. Otherwise, this Court would not have struck down the entire agreement as it did in affirming the district's court's refusal to order arbitration. Nothing in the Paladino decision indicates that there was a severability provision in that agreement to arbitrate; severability is not even mentioned in the opinion of the Court.[6]

By contrast, the arbitration agreement in this case contains a severability provision that evidences the parties' intention to enforce the remainder of the

---

[6]The opinions in Paladino are presented in a confusing way. Chief Judge Hatchett's opinion is presented first, but no other member of the panel joined it, 134 F.3d at 1055. The opinion of the Court is that of Judge Cox, joined as it was by Judge Tjoflat, id. at 1060; cf. McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002) ("Two is a majority of three, and a majority of participating judges controls a court's decision.").

agreement in the event any portion of it is deemed invalid.[7] If the severability

provision is given effect, it means that in this case, unlike in Paladino, the

remainder of the arbitration agreement survives any invalidity of its remedial

restrictions. Whether the severability provision is to be given effect is a question of

state law, because in placing arbitration agreements on an even footing with all

other contracts, the FAA makes general state contract law controlling. See

Paladino, 134 F.3d at 1061. That means in this case that the effect given the

severability clause – if the provisions restricting remedies are invalid – is to be

decided under the law of Alabama, which is the state law applicable to this

agreement.

Alabama law favors severability, and it gives full force and effect to

severability clauses. Two recent decisions of the Supreme Court of Alabama –

which happen to be in arbitration cases – illustrate. In Ex Parte Thicklin, 824 So.

2d 723 (Ala. 2002), the Court concluded that a provision in an arbitration clause

---

[7]The arbitration agreement in this case states:

> If for any reason a court of competent jurisdiction should declare all or any part of
> this Agreement invalid or unenforceable, then the remainder of this Agreement,
> or the application of such provision or provisions to persons, entities or
> circumstances other than those as to whom or which it is held invalid or
> unenforceable, shall not be affected thereby, and every provision of this
> Agreement shall be valid and enforceable to the fullest extent permitted by
> law . . . .

The mortgage rider contains a materially, though not literally, identical provision.

15

prohibiting punitive damages was invalid, but severed it out, sending the case to arbitration. Id. at 735. Then in Ex parte Celtic Life Ins. Co., 834 So. 2d 766 (Ala. 2002), the Court explained that there is a "general 'duty of the court to preserve so much of a contract as may properly survive its invalid and ineffective provisions'" and enforced the arbitration agreement minus the invalid provision excluding punitive damages. Id. at 769 (quoting 17A C.J.S. Contracts § 297 (1999)). Like the agreement in this case, the agreements in Thicklin and Celtic Life included severability clauses. Celtic Life, 834 So. 2d at 768, Thicklin, 824 So. 2d at 734. In view of the clear and settled Alabama law favoring severability, as well as the FAA's requirement that arbitration agreements be treated no less favorably than other contracts under state law, the severability clause in this case should be applied to prevent any invalid provisions from destroying the entire agreement to arbitrate.

The decision in Paladino, in which the invalid portion of the arbitration agreement was not severed, is distinguishable. 134 F.3d at 1062. As we have mentioned, the opinion in Paladino says nothing about a severability clause and there may not have been one. Also, the agreement in Paladino, a Florida case, was not to be construed and applied in light of Alabama law, id. at 1061 n.1, which favors severability. Whether we correctly applied the applicable state law in Paladino, we have an obligation to apply Alabama law correctly in this case.

16

The severability determination decides the arbitration question. Because any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions. With or without those provisions, the case goes to arbitration. Whether the agreement is valid as written or suffers invalid provisions that must be removed under the forgiving eye of the severance clause, there is a valid agreement to arbitrate in place.

Since the case is going to arbitration, an arbitrator and not a court should decide the validity of the remedial restriction provisions, because "[a] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) (quotation marks and citation omitted). Our decision in this respect aligns us with the majority of circuits that have answered this question. See, e.g., Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., 334 F.3d 721, 726 (8th Cir. 2003); MCI Telecomms. Corp. v. Matrix Comms. Corp., 135 F.3d 27, 33 n.12 (1st Cir. 1998); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 232 (3d Cir. 1997).

We realize that the Supreme Court of Alabama in Thicklin and Celtic Life did decide the validity of the challenged remedial restrictions in those cases before sending the disputes to arbitration. If it were a matter of general contract law, we would follow the Thicklin and Celtic Life approach here, because Alabama law

17

applies to the general contract questions in this case. However, unlike severability, whether a court or arbitrator is to decide particular issues is not a question of contract law, but is instead governed by the FAA; it is a federal law issue to be decided under the "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]," Moses H. Cone, 460 U.S. at 24, 103 S. Ct. at 941. State and federal courts are free to decide federal law issues for themselves (unless and until the United States Supreme Court settles the matter). We have done so, concluding that the arbitrator should decide whether the remedial provisions of the arbitration agreement are invalid, if the arbitrator decides that Anders' claims have merit.[8]

### III.

We have decided all the gateway issues: whether the arbitration agreement covers this dispute; whether it is unenforceable because prohibitively expensive; and whether any invalid provisions are severable. Our decision of those issues compels the conclusion that arbitration is the proper forum for settling the dispute between these parties. Having decided the issues "essential to defining the nature of the forum in which a dispute will be decided," Musnick, 325 F.3d at 1261 (quotation marks and citation omitted), we should not and will not decide any more. The district court properly compelled arbitration.

---

[8]We have no occasion at this time to decide the extent to which that decision of the arbitrator about the validity of the remedial provisions will be reviewable in court.

AFFIRMED.