POLSTON, J.,
dissenting.
The majority errs by holding that the arbitration agreement is not enforceable because challenged limitations of remedies within the agreement violate public policy. Contrary to the majority’s ruling, the challenged limitations may be severed from the arbitration provisions so that the arbitration should go forward as agreed by the parties. Moreover, the Florida Legislature, not this Court, should decide whether Florida’s public policy has been violated. Because the Florida Legislature has addressed the enforceability of other limitations but not these, the Court should not void the contract. The Court should not be a policy maker.
Therefore, I respectfully dissent.
I. BACKGROUND
The arbitration agreement is a standalone agreement, separate from the admissions agreement signed by the parties. The arbitration agreement explicitly provides that the Florida Arbitration Code applies and that it pertains to “[a]ny and all claims or controversies ... arising out of or in any way relating to the Resident’s stay at the facility.” It states:
A. Arbitration Provisions
1.1 Any and all claims or controversies between the Facility and the Resident arising out of or in any way relating to the Resident’s stay at the Facility, including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, and whether based upon statutory duties, breach of contract, tort theories or other legal theories (including, without limitation, any claim based on Florida Statutes §§ 400.022, 400.028, 400.428, 400.429, or a claim for unpaid nursing home or related charges), shall be submitted to final and binding arbitration. Except as expressly set forth herein, the provisions of the Florida Arbitration Code, Florida Statutes §§ 682.01, et seq., shall govern the arbitration. Each party hereby waives its right to file a court action for any matter covered by this Agreement.
[[Image here]]
1.9 The arbitration award shall be made and delivered in accordance with Section 682.09 of the Florida Arbitration Code, and shall be delivered to the parties and their counsel no later than thirty (30) days following the conclusion of the arbitration. The award shall set forth in detail the arbitrator’s findings of fact and conclusions of law.
The Petitioner challenged this arbitration agreement as unenforceable as contrary to public policy because it includes a limitation of damages otherwise available by Florida’s statutes. Specifically, the Petitioner challenged the provisions that provide that (i) “[n]on-economic damages shall be limited to a maximum of $250,000,” and (ii) “[pjunitive damages shall not be awarded.”
The trial court ruled that these provisions may be severed from the agreement, even though there is no separate severability provision, and that the remaining provisions, including arbitration, are enforceable. See Gessa v. Manor Care of Fla., Inc., 4 So.3d 679, 681 (Fla. 2d DCA 2009). The trial court did not determine whether the challenged provisions violate public policy, but it did rule that the arbitration agreement was neither procedurally nor substantively unconscionable. Id. The trial court granted Manor Care of Florida’s motion to compel arbitration. Id. at 680.
On appeal, the Second District Court of Appeal affirmed the trial court’s order compelling arbitration. Id. The Second District characterized the trial court’s ruling regarding severability as a finding of fact and determined that there was compe *496 tent substantial evidence to support it by-reviewing the agreement. See id. at 681. It held that “the trial court, having found the limitations provision here to be severa-ble, properly directed that the case proceed to arbitration.” Id. at 682.
Before this Court, the Petitioner argues that Second District erred in ruling that the arbitrator, not the court, should decide whether the arbitration agreement is enforceable because it includes limitations of remedies that violate public policy.
II. ANALYSIS
In Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University, 489 U.S. 468, 477, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the United States Supreme Court ruled that parties to a contract may choose another state’s arbitration law without preemption by the Federal Arbitration Act (FAA), except to the extent the state law undermines the goals and policies of the FAA. Accordingly, the parties’ contract should be enforced according to the Florida Arbitration Code as expressly provided for, except to the extent it conflicts with the FAA.[9]
Generally, under Florida and federal arbitration law, if enforceability of the arbitration agreement, rather than the contract as a whole, is challenged, then the court rather than the arbitration panel will decide enforceability. See Granite Rock Co. v. Int'l Bhd. of Teamsters, — U.S. -, 130 S.Ct. 2847, 2856, 177 L.Ed.2d 567 (2010); O’Keefe Architects, Inc. v. CED Constr. Partners, 944 So.2d 181, 184-85 (Fla.2006). However, the arbitration agreement may delegate to the arbitration panel the power to decide the issue of enforceability of the arbitration agreement, which should be enforced. See Rent-A-Center, W., Inc. v. Jackson, — U.S. -, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010);[10] ATP Flight Sch., LLC v. Sax, 44 So.3d 248, 252 (Fla. 4th DCA 2010). If there is no delegation to arbitration, but there are challenged provisions that may be severed from the arbitration provisions, then the matter should be decided by arbitration since the matter will be arbitrated in any event. See Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir.2003); ManorCare Health Servs. v. Stiehl, 22 So.3d 96, 99-100 (Fla. 2d DCA 2009). If there is no delegation and no severance of challenged provisions, then the court should decide whether the arbitration agreement is enforceable. See Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); Anders v. Hometown Mortg. Servs., 346 F.3d 1024, 1031 (11th Cir.2003).

Severability

Severability of the contract is a matter of state law, therefore is controlled by Florida law. See Terminix Int'l Co. v. Palmer Ranch Ltd. P’ship, 432 F.3d 1327, 1331 (11th Cir.2005).[11] Severability has *497 long been recognized in Florida’s law of contracts and is determined by the intent of the parties. See Local 234 of United Ass’n of Journeymen & Apprentices v. Henley & Beckwith, Inc., 66 So.2d 818, 822 (Fla.1953) (“Whether a contract is entire or divisible depends upon the intention of the parties.”); see also Frankenmuth Mut. Ins. Co. v. Escambia Cnty., 289 F.3d 723, 728 (11th Cir.2002) (applying Florida law and explaining that “a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other”) (quoting 6 Samuel Williston, The Law of Contracts, § 1782 (rev. ed. 1938)).
Who decides whether severance is permissible in this contract — the court or arbitrator? As earlier stated, the enforceability of the arbitration agreement, not the whole admissions agreement, is challenged and there is no delegation clause for the matter to be decided by arbitration. Accordingly, the court, rather than the arbitration panel, must decide severability here. See Howsam, 537 U.S. at 83, 123 S.Ct. 588. But, under both Florida and federal arbitration law, if the challenged provisions are severable, then the case should proceed to arbitration because the matter will be determined in arbitration. See Musnick, 325 F.3d at 1261; Stiehl, 22 So.3d at 99-100; Bland ex rel. Coker v. Health Care & Ret. Corp. of Am., 927 So.2d 252, 258 (Fla. 2d DCA 2006). With severance, there is no longer any dispute for the court to decide because arbitration will occur. See, e.g., Terminix, 432 F.3d at 1332 (describing Anders, 346 F.3d at 1031-32); Gessa, 4 So.3d at 682; Rollins, Inc. v. Lighthouse Bay Holdings, Ltd., 898 So.2d 86, 89 (Fla. 2d DCA 2005).
In this case, there is no severability clause explicitly recognizing the parties’ intent to sever. The trial court did not conduct an evidentiary hearing; rather, it simply reviewed the terms of the contract to determine that the challenged provisions were severable. See Gessa, 4 So.3d at 682. Although the Second District characterized this as finding of fact by the trial court, it is based on a construction of the agreement by the trial court, without any evidentiary hearing, to find the challenged terms severable. See id. The majority, while coming to the opposite conclusion that the challenged terms are not severable, also simply reviews the contract. Majority op. at 490.
Contrary to the majority’s ruling, the issue of severability cannot be decided in Petitioner’s favor. The majority mistakenly considers the $250,000 limitation on non-economic damages and the preclusion of punitive damages in the contract as “the financial heart of the agreement.” Majority op. at 490. However, this ignores and mischaracterizes the economic reality of the transaction. The separate admissions agreement is the financial heart of the agreement between the parties, providing for the rights and responsibilities of the parties relating to the resident’s stay at the nursing home, including the room and board rate, ancillary charges, and room and standard services by the facility. The separate arbitration agreement is a side agreement determining the specifics of arbitration, i.e., the scope, how and where the arbitration will be conducted, and the limitations of a potential arbitration award. *498 The limitations also include provisions that both parties waive their rights to attorney’s fees and costs under any .statutory rights and proposals for settlement, that net economic damages will not be limited but offset by collateral source payments and liens satisfied from the damages awarded, and that interest on unpaid nursing home charges will not be awarded.
Contrary to the majority’s ruling, the limitations of noneconomic damages and elimination of punitive damages are divisible and do not eliminate the essence of the agreement to arbitrate the parties’ claims. See Stiehl, 22 So.3d at 100 (“[W]e do not find that the remedial limitation is so interrelated and interdependent that it cannot be severed by the arbitrator if necessary....”). The remainder of the agreement, describing what will be arbitrated, how the arbitration process will occur, where the arbitration will occur, and the other limitations could remain intact without “rewriting the contract” as the majority asserts. See id. I agree with the trial court and the Second District that the contract unambiguously may be severed.[12] The majority errs by holding that the contract unambiguously prohibits severance of these challenged provisions.
Because of the severability of the challenged provisions, the matter should be arbitrated, and the arbitration panel should decide whether the challenged provisions may be enforced, if they ever arise. The speculative nature of these challenged limitations is an additional reason to enforce the arbitration provision. Petitioners may not be able to prove entitlement to noneconomic damages exceeding $250,000 or punitive damages so that the limitations would never be triggered. If that were the case, then the arbitration agreement, which otherwise should be enforced according to the facts of the case, would be improperly rendered unenforceable by the speculation that such limitations might be invoked. See PacifiCare, 538 U.S. at 407, 123 S.Ct. 1531 (holding that courts should not speculate on how an arbitrator might rule “in a manner that casts [agreements’] enforceability into doubt,” and in such cases the proper course is to compel arbitration); Kristian v. Comcast Corp., 446 F.3d 25, 40 (1st Cir.2006) (interpreting PacifiCare to state that “[g]iven the presumption in favor of arbitration, a court should not foreclose the operation of that presumption by deciding that there is a question of arbitrability when there is the possibility that an arbitrator’s decision in the first instance would obviate the need for judicial decision making”). This rationale is consistent with that used by the United States Supreme Court in Buckeye, 546 U.S. at 448-49, 126 S.Ct. 1204, to address the “conundrum” that a contract ultimately found to be unenforceable could be used to arbitrate a dispute:
It is true, as respondents assert, that *499 the Prima Paint[13] rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents’ approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. Prima Paint resolved this conundrum — and resolved it in favor of the separate enforceability of arbitration provisions.
In this case, there is a similar conundrum. The limitation provisions of a contract might be invoked if Petitioner proves sufficient damages to exceed the cap and for punitive damages. But to decide at the outset that the agreement is unenforceable because the limitations might be reached is to deny effect to an arbitration provision in a contract that the court may later find to be perfectly enforceable (because the limitations were not reached). As in Buckeye and Prima Paint, the speculative nature of the enforceability issue should be resolved in favor of the separate enforceability of arbitration provisions. See Buckeye, 546 U.S. at 448-49, 126 S.Ct. 1204; Prima Paint, 388 U.S. at 403-04, 87 S.Ct. 1801.
Public Policy — Enforceability
Because the arbitration panel should decide whether the challenged provisions may be enforced as a matter of Florida law, as described earlier, the majority erred by reaching the issue and then again by erroneously deciding the challenged limitation provisions are unenforceable as void against public policy. The Florida Legislature, not this Court, should decide Florida’s public policy.
It is well-settled that contractual waivers are enforceable under Florida law for any type of rights. See Bellaire Secs. Corp. v. Brown, 124 Fla. 47, 168 So. 625, 639 (1936) (“A party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution.”).
For instance, one may waive constitutional rights. Article I, section 26 of the Florida Constitution, contained within the Declaration of Rights, provides:
Claimant’s right to fair compensation.—
(a) Article I, Section 26 is created to read “Claimant’s right to fair compensation.” In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants. The claimant is entitled to 90% of all damages in excess of $250,000, exclusive of reasonable and customary costs and regardless of the number of defendants. This provision is self-executing and does not require implementing legislation.
The public policy of the State of Florida was expressed by the vote of the people of Florida by enacting this 2004 Florida constitutional amendment to provide rights relating to contingency attorney’s fees. In spite of the remedial provisions in favor of claimants, this Court held that these Florida constitutional rights could be waived by contract and that attorneys could recover more than permitted by this amendment. See In re Amendment to the Rules Regulating the Fla. Bar—Rule 4-1.5(f)(4)(B) of the Rules of Prof'l Conduct, 939 So.2d 1032 (Fla.2006) (adopting an amendment to the Rules Regulating the Florida Bar to per *500 mit a contractual waiver of section 26, imposing a specified legal fee structure for contingency fees). It is difficult to understand how, as a matter of public policy, the expressly declared rights of this constitutional provision may be waived, but the damages provided by statute may not be limited by contract.
Unlike other statutory remedies, the Florida Legislature has not prohibited a waiver of the remedies provided in chapter 400, Florida Statutes (2004). The Florida Legislature has specifically prohibited waiver of rights under chapter 443, Florida Statutes (2004), Florida’s unemployment compensation law, and voided any agreement that attempts to waive those rights:
443.041 Waiver of rights; fees; privileged communications.—
(1) WAIVER OF RIGHTS VOID.— Any agreement by an individual to waive, release, or commute her or his rights to benefits or any other rights under this chapter is void. Any agreement by an individual in the employ of any person or concern to pay all or any portion of any employer’s contributions ... required under this chapter from the employer, is void. An employer may not directly or indirectly make or require or accept any deduction from wages to finance the employer’s contributions ... required from her or him, or require or accept any waiver of any right under this chapter by any individual in her or his employ. Any employer or officer or agent of an employer, who violates this subsection commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
§ 443.041(1), Fla. Stat. (2004).
Moreover, the Florida Legislature stated that any waiver of specified provisions of the Motor Vehicle Retail Sales Finance Act “shall be unenforceable and void.” § 520.13, Fla. Stat. (2004). And, regarding liability of persons engaging in certain hazardous occupations, the Legislature has provided:
769.06 Contracts limiting liability invalid. — Any contract, contrivance or device whatever, having the effect to relieve or exempt the persons mentioned in s. 769.01 from the liability prescribed by this chapter shall be illegal and void.
§ 769.06, Fla. Stat. (2004). Florida’s insurance law specifies that “[n]o contract shall contain any waiver of rights or benefits provided to or available to subscribers under the provisions of any law or rule applicable to health maintenance organizations.” § 641.31(11), Fla. Stat. (2004). And chapter 713, Florida Statutes, addressing construction liens, makes unwaivable the right to claim a lien before it matures. § 713.20(2), Fla. Stat. (2004) (“A right to claim a lien may not be waived in advance.... Any waiver of a right to claim a lien that is made in advance is unenforceable.”).
Similarly, if waiver of the remedies of chapter 400 violates public policy, it should be the Florida Legislature’s decision to specify that such waivers are prohibited and void, rather than the judiciary’s. See art. II, § 3, Fla. Const, (recognizing separation of powers); Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, 9 (Fla.2004) (ruling that section 400.023 is a legislatively created cause of action to be brought by personal representatives only under certain circumstances and concluding that the Florida Legislature had the authority to determine the extent of the statutory right and to prescribe or limit the remedies available for a violation of the right). Had the legislature intended to void contractual provisions waiving remedies under chapter 400, it could have said so. See Tallahassee Mem’l Reg’l Med. Ctr. v. Kinsey, 655 So.2d 1191, 1198 (Fla. 1st DCA 1995) *501 (“Had the legislature intended that posting of a satisfactory ‘bond or security’ would relieve defendants of all further liability for future economic damages, it would have been an easy matter for it to have said so. In our opinion, the absence of any such language is strong evidence that the legislature did not intend the result urged by appellants. To presume such an intent in these circumstances would amount to the most blatant form of judicial legislation. We decline appellants’ invitation to don the legislative mantle.”); see also Knowles, 898 So.2d at 7 (noting that, although section 400.023(1) provides remedial remedies for nursing home residents, the Court is without power to add words to the statute); Fla. Wildlife Fed’n v. State Dep’t of Envtl. Regulation, 390 So.2d 64, 67 (Fla.1980) (“If the legislature had meant for the special injury rule to be preserved in the area of environmental protection, it could easily have said so.”).
Significantly, in Unicare Health Facilities, Inc. v. Mort, 553 So.2d 159, 161 (Fla.1989), this Court recognized that remedies provided in chapter 400 may be waived when it ruled that the attorney’s fees provision of section 400.023 is “merely a statutory right to seek fees,” and that “[cjlearly, statutory rights can be waived.” See also Bland, 927 So.2d at 258 (“[A] compelling argument can be made that, absent a legislative restriction, the courts should honor a party’s decision to contract away statutory protections.”); § 400.151(2), Fla. Stat. (2004) (stating that nursing home contract shall include “any other matters which the parties deem appropriate”); cf. Am. Int’l Grp., Inc. v. Siemens Bldg. Techs., Inc., 881 So.2d 7, 12 (Fla. 3d DCA 2004) (“It is well settled that the parties are free to ‘contract out,’ by an arbitration provision or otherwise, of any common law remedy which might otherwise be available. See 17 Am.Jur.2d Contracts § 709 (2004).”).
The Court has erred by invoking public policy to void this arbitration agreement.
III. CONCLUSION
Because the challenged provisions of the arbitration agreement may be severed, and the determination of whether the provisions violate public policy should be determined by the Florida Legislature rather than this Court, I would affirm the Second District’s ruling in favor of arbitration. I respectfully dissent.
CANADY, C.J., concurs.

. The FAA applies because the transaction undeniably involves interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); 9 U.S.C. § 2 (2006).

. I agree that, in this case, arbitration agreement language does not delegate the petitioner’s challenge to the enforceability of the arbitration agreement to arbitration. Therefore, Jackson does not apply, even if, without deciding the issue, the FAA requires the Jackson analysis over any contrary state law.

. The severance of unenforceable provisions of a contract as a matter of state law is not to be confused with the severability doctrine decided under federal law that treats arbitration provisions of a contract separately from the contract as a whole for purposes of the "who decides” issue. See Jackson, 130 S.Ct. at 2778 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is *497 severable from the remainder of the contract.”) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)); see also Buckeye, 546 U.S. at 447, 126 S.Ct. 1204 ("[T]he rule of severability ... ultimately arises out of § 2....").

. To any extent that this is not clear from the terms of the contract, the trial court should conduct an evidentiary hearing to determine the parties’ intent. See, e.g., Gold, Vann & White, P.A. v. Friedenstab, 831 So.2d 692, 695-97 (Fla. 4th DCA 2002) (ruling that issues relating to whether the employment contract's essential purpose would be nullified by severance must be determined by evidentiary hearing); Harrison v. Palm Harbor MRI, Inc., 703 So.2d 1117, 1119 (Fla. 2d DCA 1997) (remanding to trial court for evidentiary hearing of severability of contract where there was no severance provision in the contract). In this case, if there were an ambiguity as to whether the parties intended to sever the challenged provisions, it would itself be a gateway question of arbitrability and is therefore appropriate for a court to answer in the first instance. See PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 n. 2, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003).

. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).