**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 28, 2021**

# In the Court of Appeals of Georgia

A21A0294. OMNITECH INSTITUTE, INC. et al v. NORWOOD.

RICKMAN, Presiding Judge.

Omnitech Institute, Inc. and its president, Charleton Lester, (collectively "Omnitech") seek interlocutory review of the trial court's order denying their motion to compel the arbitration of Jasmine Norwood's employment discrimination claims. Omnitech contends that the trial court erred by accepting Norwood's argument that enforcement of the arbitration provision would prohibit her from effectively vindicating her claims because she could not afford the arbitration costs. Because the issue of arbitration costs is not ripe at this stage of the proceedings, we reverse.

On appeal from a denial of a motion to compel arbitration, we "review[ ] the record de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law. However, we defer to the trial court's findings

of fact upon which its denial was based unless those findings are clearly erroneous." (Citations and punctuation omitted.) *Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d 531) (2019).

So viewed, Omnitech hired Norwood in April 2019 to work as a substitute teacher. Her employment contract contained an arbitration clause stating that any claim arising out of her employment would be settled by binding arbitration before a panel of three arbitrators in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA").

Approximately five months after she had been hired, Norwood sued Omnitech. In her complaint, Norwood alleged that Lester had made multiple unwanted sexual advances toward her, including grabbing and rubbing against her, and that when she complained to her supervisor, she was told that the only way to avoid interacting with Lester was to quit, which she ultimately did. Norwood's complaint asserted state law tort claims and federal Title VII sexual harassment and retaliation claims. In response, Omnitech filed a motion to compel arbitration and dismiss the complaint. Norwood opposed the motion, acknowledging that she had agreed to the arbitration clause and that it covered her claims, but asserting that it was nonetheless unenforceable.

Specifically, Norwood argued that she could not effectively vindicate her rights through arbitration because she could not afford the arbitration fees.

The trial court denied Omnitech's motion to compel arbitration, finding that "enforcing the [arbitration] agreement will preclude [Norwood's] effective vindication of her federal statutory rights."

Omnitech contends that the trial court erred by accepting Norwood's argument that enforcement of the arbitration provision would prohibit her from effectively vindicating her claims because she could not afford the arbitration costs.

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. This preference for enforcing arbitration agreements "requires a liberal reading of [such] agreements," and any doubts concerning the arbitrability of an issue should be resolved in favor of arbitration. *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 441 (2) (a) (602 SE2d 201) (2004) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U. S. 1, 23 (103 SCt 927, 74 LE2d 765) (1983)). Indeed, even federal statutory claims, such as the employment discrimination claims Norwood asserts here, may be resolved through arbitration – "so long as the prospective litigant effectively may

3

vindicate his or her statutory cause of action in the arbitral forum[.]" (Citation and punctuation omitted.) *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 28 (III) (A) (111 SCt 1647, 114 LE2d 26) (1991).

In *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U. S. 79 (121 SCt 513, 148 LE2d 373) (2000), the Supreme Court recognized that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." Id. at 90 (III). Because, the record, however, had no information about such costs or who would bear them, the Supreme Court held that "[t]he 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. at 91 (III).

The circumstances under which the effective vindication defense would invalidate an arbitration agreement is an issue of first impression in Georgia. The Eleventh Circuit has addressed the defense several times in the wake of *Green Tree*, but so far has rejected it as too speculative in every case. In *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255 (11th Cir. 2003), the court held that "[u]nder *Green Tree*, [the plaintiff] has an obligation to offer evidence of the amount of fees he is likely to incur, as well as of his inability to pay those fees." Id. at 1260 (II).

4

Noting that other circuits have taken a case-by-case approach in evaluating the sufficiency of a plaintiff's proof, the *Musnick* court rejected as "wholly inadequate" the plaintiff's affidavit stating that he was "fearful of a potential attorney's fee award against [him that he] will be unable to pay." Id. (punctuation omitted). Thus, *Musnick* established that a plaintiff resisting arbitration cannot traffic in generalities, but must instead present specific, dollar-amount evidence of arbitration costs.

Even specific dollar amounts, however, are insufficient unless the plaintiff can show that she will actually be required to pay them. Further, the plaintiff must show that she is required to pay arbitration costs at the outset, not just that they may be assessed later. In *Anders v. Hometown Mtg. Svcs.*, 346 F.3d 1024 (11th Cir. 2003), the plaintiff, who had borrowed money from the defendant to buy a home, sued the defendant for violations of federal real estate and lending law. The loan agreement contained an arbitration clause much like the one here, requiring arbitration of disputes in accordance with AAA's commercial dispute rules. Id. at 1026-1027 (I), 1028 (II). The plaintiff argued that he "simply [could] not afford to pay the $3,500.00 to $6,000.00 that [he had] determined w[ould] be required to arbitrate [his] claims." Id. at 1028 (II). The Eleventh Circuit rejected this argument, noting that the AAA rules provide that administrative fees may be reduced or deferred in the event of

extreme hardship on the part of either party and that while other costs are generally borne equally by the parties, the arbitrator is authorized to rule otherwise. Id. at 1028 (II).[1]

Here, it is undisputed that Norwood's employment contract contained an arbitration clause which stated that any claim arising out of or relating to the contract or the services provided pursuant to the contract would be settled by binding arbitration in accordance with the commercial arbitration rules of the AAA. To support her argument that she could not afford the costs of arbitration, Norwood submitted a copy of AAA's commercial arbitration rules, which include a general fee schedule that outlines the initial administrative filing fees based on the amount of the plaintiff's claim. These fees are to be advanced by the party filing the claim, however, Norwood also submitted a copy of the commercial arbitration rules which specifically provide that "[t]he AAA may, in the event of extreme hardship on the part of any

---

[1] The *Anders* court explained that "[w]e need not decide if those provisions of the AAA rules alone are enough to preclude a finding that arbitration would be prohibitively expensive for [the plaintiff], because there is more." *Anders*, 346 F.3d at 1028-1029 (II). The "more" was that the lender had stipulated in court that if the plaintiff could not afford the arbitration expenses, then the lender would agree to bear the fees. Under those circumstances, the court found that, "it follows that [the plaintiff] has not demonstrated that arbitration would be prohibitively expensive for him." Id. at 1029 (II).

party, defer or reduce the administrative fees." In addition, the parties are required to split the costs and expenses of arbitrators, AAA representatives, and witnesses, "unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties."

Although the trial court concluded that the fees cited by Norwood were not too speculative, the court failed to consider the AAA rules providing that administrative fees may be reduced or deferred in case of extreme financial hardship and that arbitrators may choose to apportion remaining expenses in a manner other than simple cost-splitting and what impact those rules would have on Norwood's claim that arbitration would be cost prohibitive for her. At present, Norwood has not established that she will actually be required to pay these fees and thus, the trial court erred by applying the effective vindication defense at this stage of the proceedings. See *Anders*, 346 F.3d at 1028 (II).[2]

*Judgment reversed. Senior Appellate Judge Herbert E. Phipps, concurs and McFadden, C. J. dissents.*

---

[2] Given our holding, we need not address Omnitech's remaining challenges to the trial court's order.

# In the Court of Appeals of Georgia

A21A0294. OMNITECH INSTITUTE, INC. et al. v. NORWOOD.

MCFADDEN, Chief Judge, dissenting.

The question before the superior court was whether in "seek[ing] to invalidate [the] arbitration agreement on the ground that arbitration would be prohibitively expensive," Jasmine Norwood met her "burden of showing the *likelihood* of incurring such costs." See *Green Tree Financial Corp.-Ala. v. Randolph*, 531 U. S. 79, 92 (III) (121 SCt 513, 148 LE2d 373) (2000) (emphasis added). The court found that she had.

8

The question before us on appeal is whether there is any evidence to support that finding. There is.

That evidence established that, under the fee schedule for the vendor specified in the arbitration agreement, AAA, and for the commercial arbitration program specified in the agreement, Norwood would have to pay administrative fees of nearly 75% of her annual income to initiate arbitration. There is evidence of other very substantial fees and expenses that would subsequently accrue. But the evidence of that initiation fee was sufficient by itself to sustain the trial court's finding.

The majority opinion usurps the trial court's role as fact finder. The federal case law on which the majority relies is not on point. It is not factually apposite, and it was decided under a different standard of appellate review. So I respectfully dissent.

On appeal from a denial of a motion to compel arbitration, we "review[ ] the record de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law. However, we defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous." *Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d 531) (2019) (citations and punctuation omitted). "In Georgia, it is well-settled that the 'clearly erroneous'

standard for reviewing findings of fact is equivalent to the highly deferential 'any evidence' test." *Reed v. State*, 291 Ga. 10, 13 (3) (727 SE2d 112) (2012) (citing both civil and criminal decisions for this principle).

So on appellate review in this case, the question is simply whether there is any evidence from which the trial court could have concluded that Norwood met her burden of showing that she was likely to incur costs that would make access to the arbitral forum prohibitively expensive to her. I emphasize that under *Green Tree* she needed only show that it is *likely* she would incur prohibitively expensive costs, not that she definitely would incur them. *Green Tree*, 531 U. S. at 92 (III). The record in this case does contain such evidence. That evidence is sufficient to sustain the trial court's ruling.

The record contains Norwood's affidavit testimony that, since she stopped working for Omnitech, her only source of income has been the approximately $200 per week she earns as an Uber driver. As to assets, Norwood further averred:

> I do not have any assets I can contribute to the payment of arbitration fees and costs. I do not own a home, and I cannot afford rent. I live with my family upon whom I rely to help ensure I have basic life necessities. I don't own the vehicle I use to drive for Uber; I lease it.

She concluded in the affidavit: "I would not be able to afford to pursue my claims against Omnitech and Mr. Lester were I required to pay the costs and fees required by the AAA commercial arbitration rules." The record also contains the AAA's fee schedule for commercial arbitrations, which sets forth a $7,700 administrative fee to initiate an arbitration proceeding in a case, such as Norwood's, involving "undetermined monetary claims."

So the $7,700 initiation fee specified in the AAA's fee schedule would have required Norwood to pay nearly 75% of her annual income simply to gain access to the arbitral forum in the first instance. (This does not take into account her other unliquidated responsibilities under the fee schedule — which the AAA might or might not have reduced in light of her circumstances — and which would include her share of the fees and expenses of three arbitrators, likely three experienced attorneys.)

This evidence — how much money Norwood makes, her access to resources, and the AAA's published fee schedule — is concrete and specific. It is not speculative. It was for the trial court as the finder of fact, rather than this court, to determine whether the facts established by this evidence were enough to show the requisite likelihood of prohibitive costs. Norwood's evidence met the "any evidence" standard.

11

The cases cited by the majority cannot support the contrary outcome it adopts. In the first place, they are factually inapposite. In *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F3d 1255, 1260 (II) (11th Cir. 2003), the circuit court rejected as "simply too 'speculative' to render his agreement to arbitrate unenforceable" an affidavit that "merely recite[d]" that:

> I genuinely fear the imposition of attorney's fees from Fisher & Phillips, as I am familiar with their billing sent to King Motors. Fisher & Phillips' hourly rate is high, and I imagine it will be higher when billed to an opponent. . . . I am fearful of a potential attorney's fee award against me. . . . I will be unable to pay.

*Musnick v. King Motor Co. of Fort Lauderdale*, 325 F.3d 1255, 1260 (11th Cir. 2003).

And the defendant in *Anders v. Hometown Mtg. Svcs.*, 346 F3d 1024, 1029 (II) (11th Cir. 2003), "stipulated in the district court that if [the plaintiff] was unable to pay for arbitration and his inability would preclude arbitration, [the defendant] would agree to bear the administrative fees which [the plaintiff] would otherwise be required to pay in the institution of an arbitration action." (Punctuation omitted.) The court in *Anders* held that, "[g]iven [the defendant's] willingness to bear the costs of arbitration that [the plaintiff] is unable to afford . . ., it follows that [the plaintiff] has not

12

demonstrated that arbitration would be prohibitively expensive for him." Id. Certainly, if Omnitech and Lester had agreed to pay Norwood's administrative fee to initiate the proceeding in the event she could not do so, then there would be no issue of Norwood's initial access to the forum, as there is here.

Nor do the other cases cited by Omnitech and Lester in support of their argument that the evidence was insufficient support the trial court's findings; the evidence in those cases lacks the level of specificity found in this case. In *Suazo v. NCL (Bahamas) Ltd.*, 822 F3d 543, 555 (III) (B) (11th Cir. 2016), the plaintiff offered no evidence to the trial court supporting his cost estimate and merely stated in his affidavit "that he lives in a poor community, where it is not easy to find work, that he does not have money to pay for an arbitration, much less for an arbitrator's salary, and that he does not have the means to pay thousands of dollars to an arbitrator") (punctuation omitted). In *Escobar v. Celebration Cruise Operator*, 805 F3d 1279, 1292 (VIII) (B) (11th Cir. 2015), the plaintiff offered no explanation for how he arrived at his estimate of costs. In *American Family Life Assur. Co. v. Hubbard*, 759 Fed. Appx. 899, 906 (III) (B) (11th Cir. 2019), the plaintiffs introduced no evidence as to either the amount of fees and expenses they were likely to incur or their inability to pay those fees and expenses.

More fundamentally, it is important to recall that the Eleventh Circuit case law cited by the majority is not binding authority — even on questions of federal law. *Hurston v. State*, 310 Ga. 818, 829 (3) (b) (854 SE2d 745) (2021). The only federal case law binding on us is that from the Supreme Court of the United States — and only on questions of federal constitutional and statutory interpretation. See *Stubbs v. Hall*, 308 Ga. 354, 371 (5) (b) (840 SE2d 407) (2020); *Southstar Energy Svcs. v. Ellison*, 286 Ga. 709, 713 (1) (691 SE2d 203) (2010); *Pope v. City of Atlanta*, 240 Ga. 177, 178 (1) (240 SE2d 241) (1977).

More fundamentally still, these federal decisions are of limited persuasive authority the because the federal appellate courts review district courts' fact finding with less deference than we owe our superior courts. While the Georgia and federal appellate courts apply the same label to their standards of review of fact finding — clearly erroneous — the standards are very different. For the Georgia appellate courts, review under the clearly erroneous standard "is equivalent to the highly deferential 'any evidence' test." *Reed*, 291 Ga. at 13 (3). But while the Eleventh Circuit has declared that "[c]lear error is a highly deferential standard of review," that court nevertheless exercises the power to overrule "a factual finding [as] clearly erroneous when *although there is evidence to support it*, the reviewing court on the entire

14

evidence is left with the definite and firm conviction that a mistake has been committed." *Freeman v. SmartPay Leasing*, 771 Fed. Appx. 926, 932 (III) (11th Cir. 2019) (citation and punctuation omitted; emphasis supplied). Such deference confines circuit courts only as much as they choose to be confined.

So we are bound by the United States Supreme Court's holding that Norwood bears the "burden of showing the *likelihood* of incurring such costs." *Green Tree*, supra. But even if the Eleventh Circuit's decision in *Anders* did hold (rather than merely assert in dicta, as the majority acknowledges in footnote 1) that a plaintiff seeking to meet her burden under *Green Tree* "must show that she is required to pay arbitration costs at the outset, not just that they may be assessed later," we would not be bound by that holding. And, in light of the deference we owe trial courts, it is not proper for us to so alter a burden of proof under the guise of any-evidence review.

So the majority errs in holding that the trial court failed to consider the impact of other AAA rules upon Norwood's ability to pay the arbitration fees. The majority points to two provisions within the AAA rules: a provision permitting the AAA to reduce or defer the administrative fees in the event of a party's "extreme hardship," and a provision that requires the parties to split certain costs and expenses until the

15

arbitrators assess some or all of those expenses on a particular party or parties. But the majority's reliance on that evidence oversteps the standard of review.

The majority is also wrong. The trial court did consider these provisions. These provisions were made a part of the record before the trial court. The trial court expressly stated in her order that she "review[ed] the record in its entirety[.]" It was for the trial court, not this court, to decide what inferences to draw about how those rules would be administered.

Moreover, Omnitech and Lester did not argue either of these AAA rules to the trial court as support for their argument that Norwood did not make the necessary showing under the effective vindication doctrine. So even if the trial court did not consider these provisions in her ruling, and even if her ruling was incorrect as a result, "we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court." *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-294 (1) (704 SE2d 915) (2010) (citations and punctuation omitted).

The trial court's ruling was not incorrect. There is no need inquire into whether and to what extent Norwood's burden of proof required her to establish exactly what fees would be incurred and exactly how the AAA's cost-splitting rules would be administered. There is no need to embark on those inquires because she has proven

that she cannot pay the $7,700 administrative fee required to access the arbitral forum in the first instance.

As to the evidence of what that initial administrative fee would be, the AAA rules provide that the "fees in effect when the fee or charge is incurred *shall* be applicable" and that the "filing fee *shall* be advanced by the party or parties making a claim[.]" (Emphasis supplied.) While the rules permitted the AAA to reduce or defer that amount for extreme hardship, they did not require the AAA to do so. Under the clearly erroneous standard of review applicable in Georgia, this court must affirm the trial court's factual findings if there is any evidence supporting them. *Reed*, 291 Ga. at 13 (3). The language of the AAA rules authorized the trial court to find that Norwood likely would be required to pay $7,700 (the amount shown on the fee schedule) to initiate her claim, and this court should resist the temptation to engage in fact finding in the court's stead.

The majority errs yet again in holding that "the issue of arbitration costs is not ripe at this stage of the proceedings" and that Norwood has not "[a]t present" shown that she will have to pay exorbitant fees to access the arbitral forum. These statements suggest there may be some future point in the proceedings when Norwood would be better positioned to invoke the effective vindication doctrine. But there will be no

17

future point in the proceedings. The majority's reversal in this case effectively brings the case in the trial court to an end. And the question of whether the arbitration agreement is unenforceable because Norwood cannot afford arbitration is not a matter for the arbitration panel; instead, it "falls within the category of a 'gateway matter' which the Supreme Court [of the United States] has instructed us that courts and not arbitrators should decide[.]" *Anders*, 346 F3d at 1029 (II).

For these reasons, the trial court did not err in finding that Norwood met her burden of showing that, under the effective vindication doctrine, the arbitration agreement should not be enforced. And there is no merit to any of the other arguments that Omnitech and Lester raise in support of their appeal. So the trial court's order is due to be affirmed.