[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13233
_____

D.C. Docket No. 2:15-cv-00413-RDP


RODNEY BODINE,

Plaintiff - Appellant,

versus

COOK'S PEST CONTROL INC.,
a corporation,
MAX FANT,
individually,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 29, 2016)

Before WILSON, MARTIN, and HIGGINBOTHAM,[*] Circuit Judges.

WILSON, Circuit Judge:

This case requires us to interpret the non-waiver provision of the Uniform Services Employment and Reemployment Rights Act of 1994 (USERRA) as it relates to the Federal Arbitration Act (FAA) and enforcement of an arbitration agreement with terms purportedly in conflict with USERRA. USERRA provides statutory protection to members of the military against discrimination by employers because of their military service, 38 U.S.C. § 4301(a), and contains a non-waiver provision that prevents contractual agreements from reducing, limiting, or eliminating rights protected under the Act, *see id.* § 4302(b).

After thorough consideration of the parties' briefs and having had the benefit of oral argument, we conclude that the FAA and USERRA's non-waiver provision are not in conflict and the district court properly compelled arbitration.

I

Plaintiff-Appellant Rodney Bodine was an employee of Defendant-Appellee Cook's Pest Control (Cook's) from 2012 to 2014, during which time he also served in the United States Army Reserve. Bodine's commitment to the armed forces required him to periodically take leave from work to attend drills and training. Bodine alleges that his supervisor, Max Fant, repeatedly discriminated against him

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

on the basis of his military service by making negative comments about his military obligations, encouraging him to leave the Army Reserve, taking work away from him while he was at drills and training, and eventually firing him in retaliation for continued military service.

After losing his job, Bodine filed suit against Cook's and Fant (collectively, the Defendants), bringing claims under USERRA and Alabama state law. The Defendants responded with a motion to dismiss or, in the alternative, to stay action and compel arbitration, citing Bodine's employment contract (the Contract).[1] Under the Contract, the parties agreed to resolve any disputes arising out of or in any way related to the Contract through alternative dispute resolution mechanisms (the arbitration agreement). Bodine argued before the district court that the arbitration agreement was unenforceable because the arbitration agreement *itself* contained two terms that violated USERRA: (1) the limitation on the employee's arbitration costs, with opportunity for the arbitrator to re-apportion costs and attorney's fees in the arbitrator's final order (the fee term); and (2) the six-month statute of limitations (statute of limitations term). USERRA states there is no statute of limitations for bringing a USERRA claim and no imposition of court costs or fees may be charged to a USERRA plaintiff. *See* 38 U.S.C. §§ 4323(h)(1), 4327(b).

---

[1] For ease of reference, the pertinent portions of the Contract are reproduced in the Appendix.

The Defendants conceded that these two terms ran afoul of USERRA, but argued that the Contract's severability clause could be used to remove the invalid terms from the arbitration agreement while retaining and enforcing the remainder, pursuant to the FAA.[2]  Bodine responded that USERRA's non-waiver provision, 38 U.S.C. § 4302(b), precluded enforcement of the arbitration agreement, despite the FAA, because the plain language of § 4302(b) prevents enforcement of any agreement that contains terms that reduce substantive USERRA rights, and the fee term and statute of limitations term reduced Bodine's substantive USERRA rights.

The district court agreed with the Defendants.  Applying the FAA's "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983), the court looked to state law to determine whether the severability clause was enforceable. *See Bodine v. Cook's Pest Control, Inc.*, No. 15-00413, slip op. at 4–5 (N.D. Ala. June 18, 2015).  Then, after concluding Alabama law favors severability and the parties clearly anticipated severance of any invalid terms, the court entered an order striking from the arbitration agreement the two terms that violated USERRA, dismissing the suit without prejudice, and ordering Bodine to submit his claims to

---

[2] Article VIII.B of the Contract provides as follows: "If any term or provision of this Agreement shall be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the fullest extent and the broadest application permitted by law. . . ."

arbitration. *Id.* at 5–7. The district court's opinion did not address the role or scope of USERRA's non-waiver provision, or its relationship to the FAA.

Bodine filed this timely interlocutory appeal.

## II

We have jurisdiction pursuant to 9 U.S.C. § 16. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). We review de novo the district court's grant of a motion to dismiss and compel arbitration. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007).

## III

Bodine renews the same argument on appeal. He contends that the district court erred by failing to apply the plain language of USERRA's non-waiver provision. Had the court properly applied that provision, 38 U.S.C. § 4302(b), Bodine argues, the arbitration agreement would be unenforceable, as a whole, because the plain language of that subsection states that USERRA "supersedes" any "agreement" that "limit[s], reduce[s], or eliminate[s]" any rights protected under USERRA, and the arbitration agreement contains USERRA-offensive terms. *See* 38 U.S.C. § 4302(b).

We proceed in two parts. First, we explain why the Contract's arguable delegation clause—which would require that the arbitrator, rather than the court, determine whether the arbitration agreement is enforceable—does not control this

appeal.  Second, in reaching whether the arbitration agreement is enforceable, we conclude that § 4302(b) is not in conflict with the FAA and the district court properly determined the arbitration agreement is enforceable.

A

The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract's arbitration agreement is enforceable.  These clauses are generally referred to as "delegation clause[s]."  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70, 130 S. Ct. 2772, 2777–78 (2010).  However, the mere presence of a delegation clause in a contract is not dispositive of the court's disposition of the case.  A delegation clause operates as a defense that the defendant must raise in order to rely upon it.  *See Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1291–92 (11th Cir. 2014).  When a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration.  *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015).[3]  When the defendant does not properly raise the delegation clause and the plaintiff suffers prejudice as a result, the defendant has waived the delegation clause and the

---

[3] In *Parnell*, we stated that, "[b]ecause the [arbitration agreement] contains a delegation provision, we only retain jurisdiction to review a challenge to that particular provision."  804 F.3d at 1148.  We did not use the term "jurisdiction" in its technical sense, but rather to convey that whether the arbitration agreement was enforceable was a decision committed not to the court, but to the arbitrator.  *See id*; *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 1242 (2006) (observing that the "[Supreme] Court, no less than other courts, has sometimes been profligate in its use of the term ['jurisdiction'].").

6

court must determine whether the arbitration agreement is enforceable. *See Johnson*, 754 F.2d at 1294.

Here, the parties disagree whether the Contract contains a delegation clause, but even to the extent one exists, the Defendants did not properly raise it. The Defendants' original and amended Motions to Dismiss only vaguely referenced the issue of arbitrability and their Reply to Bodine's Response in Opposition argued the merits of the arbitration agreement's enforceability, without mentioning that the issue should be committed to the arbitrator. Further, the district court ruled in the Defendants' favor based on *its* construction of the arbitration agreement, and the Defendants' appellate brief defends that ruling without arguing that the arbitrator should have reached that conclusion. As such, the Defendants have not "argued consistently that the threshold issue was assigned by agreement to the arbitrator," and their failure to do so prejudiced Bodine by causing him to suffer the cost of litigating an issue that arbitration was designed to alleviate. *See Johnson*, 754 F.3d at 1294–95 (internal quotation marks omitted and alteration adopted). Thus, the Defendants waived enforcement of the delegation clause. *Compare Rent-A-Center*, 561 U.S. at 66, 130 S. Ct. at 2775 (defendant properly raised delegation clause by consistently arguing that the issue of arbitrability was assigned to the arbitrator) *and Parnell*, 804 F.3d 1142 (same), *with Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269 (11th Cir. 2012) (delegation clause

waived because defendant raised the delegation clause for the first time a full year after litigation commenced).

Accordingly, whether the arbitration agreement is enforceable was properly before the district court and is now properly before us on appeal.

B

As a general matter, the FAA makes enforceable arbitration agreements contained in employment contracts of non-transportation workers.  *See* 9 U.S.C. §§ 1, 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S. Ct. 1302, 1311 (2001).  Here, the Contract is an employment contract between Bodine and Cook's for a job "calling upon customers of [Cook's] for the purpose of providing, soliciting for and/or selling the services and products of [Cook's] as they relate to the pest control business."  It is therefore a non-transportation employment contract covered by the FAA.

Under the FAA, we are obligated to "rigorously enforce arbitration agreements according to their terms, including . . . . for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. ___, ___, 133 S. Ct. 2304, 2309 (2013) (internal quotation marks omitted).  Section 3 of the FAA authorizes federal district courts to stay proceedings and

compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3.

When an arbitration agreement contains invalid terms but the overarching contract has a severability clause, the FAA requires that we turn to state law to determine whether the contract's severability clause may be used to remove the offending terms in the arbitration agreement.  *See Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317 (11th Cir. 2005) (per curiam).  We rely on state law because, "in placing arbitration agreements on an even footing with all other contracts, the FAA makes general state contract law controlling."  *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1032 (11th Cir. 2003).  If the severability clause is enforceable under the relevant state law, then "any invalid provisions [in the arbitration agreement] are severable, [and] the underlying claims are to be arbitrated."  *Id.*

Here, Bodine does not argue that USERRA reflects a "contrary congressional command" to prevent waiver of a judicial forum for USERRA claims.  *See Italian Colors Rest.*, 570 U.S. at ___, 133 S. Ct. at 2309.  In fact, the parties expressly agree that USERRA claims are arbitrable.  *See Bodine*, slip op. at 4.  Instead, Bodine makes the narrower argument that USERRA's non-waiver provision and the FAA are incompatible as applied to an arbitration agreement with USERRA-offending terms, and USERRA alone should govern this dispute.  Bodine believes the statutes conflict because he reads USERRA's non-waiver

9

provision to mandate automatic invalidation of an entire contract or agreement that contains USERRA-offending terms, while the FAA allows a contract's severability clause to be used to sever those offending terms, if state law gives effect to severability clauses.  Thus, to determine whether the district court erred, we must first evaluate whether USERRA's non-waiver provision conflicts with the FAA.

We are hesitant to conclude that two federal statutes are in conflict with one another.  "When two statutes are capable of co-existence . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533, 115 S. Ct. 2322, 2326 (1995).  To determine whether such a conflict exists, the courts must "examine[] with care" the text of the statute.  *See id.* at 532, 115 S. Ct. at 2326.

USERRA's non-waiver provision reads as follows:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302(b).  Bodine argues that the word "supersedes" means § 4302(b) automatically invalidates any contractual agreement that "reduces, limits, or eliminates" substantive rights protected under USERRA.  Thus, he contends, §

4302(b) invalidates the Contract's entire arbitration agreement, if not the Contract itself, because the arbitration agreement contains a fee term and statute of limitations term that violate §§ 4323(h)(1) and 4327(b) of USERRA.

We are unpersuaded that Bodine's construction and application of § 4302(b) is the most reasonable reading of that provision.  Instead, we conclude that USERRA can be read in harmony with the FAA.

To begin, the dictionary definition of "supersedes" does not support Bodine's reading that Congress intended § 4302(b) to "automatically invalidate" a contract that contains invalid terms.[4]  Black's Law Dictionary defines "supersede" as "[t]o annul, make void, or repeal by taking the place of."  *Supersede*, Black's Law Dictionary 1667 (10th ed. 2014).  Similarly, Merriam-Webster's entry reads: "(1) (a) to cause to be set aside, (b) to force out of use as inferior; (2) to take the place, room, or position of; (3) to displace in favor of another : supplant." *Supersede*, Merriam Webster's Collegiate Dictionary 1183 (10th ed. 1996). Lastly, Webster's: "(1) to cause to be set aside or dropped from use as inferior or obsolete and replaced by something else; (2) to take the place or office of; to succeed; (3) to remove or cause to be removed so as to make way for another; to supplant."  *Supersede*, Webster's New Twentieth Century Dictionary of the English Language 1830 (1976) (unabridged).  All three dictionaries indicate that

---

[4] USERRA does not define "supersedes."

11

the word "supersedes" involves replacing one thing with another, rather than causing something to be cancelled or invalidated without replacement.

Moreover, USERRA itself provides many substantive terms to govern employment relationships, generally, but it cannot provide all the terms necessary to define any particular employment relationship. Construing "supersedes" to mean USERRA's terms replace all the terms of an employment contract would leave critical gaps in the employer-employee relationship. Thus, by writing "[t]his chapter supersedes," we believe Congress contemplated that the substantive terms set forth in USERRA would "take the place of" those in a contract or agreement that work to "replace[], limit[], or eliminate[]" "any right or benefit" guaranteed under the statute. This reading ensures that all invalid terms are replaced with USERRA terms, while all other terms of employment that do not offend USERRA and provide particularized details as to the way the employer-employee relationship functions are maintained.

Reading § 4302(b) in context further confirms that this is the correct construction. *Cf., e.g.*, *King v. Burwell*, 576 U.S. ___, ___, 135 S. Ct. 2480, 2489 (2015) (explaining that courts must look to statutory provisions "in their context and with a view to their place in the overall statutory scheme" because courts are tasked with "constru[ing] statutes, not isolated provisions" (citation and internal quotation marks omitted)). Subsection (a) contemplates that a contract might

12

include additional or more beneficial terms than those set forth in USERRA.  *See* 38 U.S.C. § 4302(a); *see also* 20 C.F.R. § 1002.7(c).  To ensure our servicemen and women benefit from these terms, § 4302(a) mandates that no provision of USERRA be read to "supersede, nullify or diminish any . . . contract, agreement, . . . or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter."  38 U.S.C. § 4302(a).  If we were to read "supersede" in § 4302(b) as invalidating an entire agreement due to its USERRA-violative terms, then we would run afoul of § 4302(a) because so doing would "nullify" more beneficial terms in addition to removing the invalid ones.

Lastly, we find no conflict between the liberal canon of construction commonly applied to reemployment rights statutes, *see, e.g.*, *Ala. Power Co. v. Davis*, 431 U.S. 581, 584–85, 97 S. Ct. 2002, 2004–05 (1977), and our interpretation of § 4302(b).  Bodine contends that this liberal canon requires us to construe the Act as broadly invalidating any contract or agreement, in whole, that contains a USERRA-offending term.  But for the reasons just stated, so doing would be not only contrary to the text of USERRA but also to the detriment of the employee.  Consequently, by construing § 4302(b) to replace all terms in conflict with USERRA while retaining all those terms more beneficial than USERRA, we

have read the non-waiver provision to provide the greatest benefit to our servicemen and women.

Accordingly, USERRA's non-waiver provision should not be read to automatically invalidate an entire agreement with USERRA-offending terms. Instead, the plain language of § 4302(b) contemplates *modification* of an agreement by replacing USERRA-offending terms with those set forth by USERRA. Thus, we hold that USERRA's non-waiver provision does not conflict with the FAA: both statutes provide a mechanism for striking from an arbitration agreement a term in conflict with USERRA.

It follows, then, that the district court committed no error by looking to state law, pursuant to the FAA, to determine whether the invalid terms from the arbitration agreement could be severed and the remainder enforced. *See Anders*, 346 F.3d at 1032. We agree with the district court that the Contract's arbitration agreement was enforceable. The Contract expressly states that any determination regarding the "validity, construction, interpretation, and effect" of the Contract is governed by Alabama law, which we have held "favors severability" and "gives full force and effect to severability clauses."[5] *See id.* Additionally, the Contract contains an express severability provision, applicable to all portions of the

---

[5] Alabama law favored severability at the time we decided *Anders* and continues to do so today. *See Sloan Southern Homes, LLC v. McQueen*, 955 So. 2d 401, 404 (Ala. 2006) (reaffirming rule from *Ex parte Celtic Life Ins. Co.*, 834 So. 2d 766 (Ala. 2002), on which we previously relied, that the Alabama courts "will excise void or illegal provisions in a contract, even in the *absence* of a severability clause").

14

Contract, reflecting the parties' clear intent to remove any invalid or unenforceable terms and apply the remainder. Thus, "[b]ecause severability clauses are enforceable under [Alabama] law and the FAA requires that arbitration agreements be treated no less favorably than other contracts under state law," *Jackson*, 425 F.3d at 1317, the district court correctly concluded that the severability clause in the Contract could be used to "surgically lance the unlawful portions of the arbitration clause," *Bodine*, slip op. at 4.

However, the district court's order should not have performed that surgery itself. The arbitrator, not the district court, must determine the validity of the terms of the arbitration agreement. *See Anders*, 346 F.3d at 1032–33. At arbitration, the parties will have an opportunity to present their arguments regarding the validity of the terms of the arbitration agreement, and the arbitrator will be tasked with determining their validity. Accordingly, we affirm the district court's order insofar as it compels arbitration of Bodine's claims, but we leave to the arbitrator whether the arbitration agreement's terms are valid.

## IV

In sum, we affirm the district court's decision to compel arbitration.

**AFFIRMED.**

MARTIN, Circuit Judge, dissenting:

The Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA") carries on a long tradition, reflected in our laws, of protecting the rights of "those who left private life to serve their country in its hour of great need." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S. Ct. 1105, 1111 (1946). I read the majority's analysis to impede that tradition, and in my view, it does so based on two mistakes. First, the majority interprets 38 U.S.C. § 4302(b) in a way that is not consistent with the statute's plain text. Second, the majority gives the defendants more than they asked for—a second chance to apply contract terms that admittedly violate USERRA. In both ways, the majority weakens the rights of veterans based on a statute intended to give them strength. I respectfully dissent.

## I.

The majority interprets § 4302(b) as invalidating only the pieces of an agreement that violate USERRA, rather than the whole agreement. After briefly consulting the statutory text, the majority discusses policy goals to arrive at what it calls "the most reasonable reading" of § 4302(b). But where the text of the statute is not ambiguous, we have no call to substitute what we think might be a more reasonable reading of a statute—rather, "we must apply the statute according to its

16

terms."  Carcieri v. Salazar, 555 U.S. 379, 387, 129 S. Ct. 1058, 1063–64 (2009).

The majority did not do that here.

A.    The Statutory Text

"[O]ur inquiry begins with the statutory text, and ends there as well if the

text is unambiguous."  BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124

S. Ct. 1587, 1593 (2004) (plurality).  Section 4302(b) reads as follows:

> This chapter supersedes any State law (including any local law or
> ordinance), contract, agreement, policy, plan, practice, or other matter
> that reduces, limits, or eliminates in any manner any right or benefit
> provided by this chapter, including the establishment of additional
> prerequisites to the exercise of any such right or the receipt of any
> such benefit.

38 U.S.C. § 4302(b) (emphasis added).  By its plain language, the statute

supersedes "any . . . contract [or] agreement," not merely the illegal pieces of a

contract or agreement, as the majority says.  Id. (emphasis added).  Nowhere does

the statute include the limitation found by the majority.  Everything listed in

§ 4302(b) ("law . . . , contract, agreement, policy, plan, practice, or other matter")

is a whole, not a piece of a larger whole (for example, "contract provision" or

"term of agreement").[1]  We must assume that Congress says in a statute what it

means and means in a statute what it says.  BedRoc Ltd., LLC, 541 U.S. at 183,

124 S. Ct. at 1593.

---

[1] Rather than using limiting language, Congress used the all-inclusive word "any" six times in § 4302(b).  This emphasizes the statute's broad scope.

17

We know that Congress can target pieces of a contract in a non-waiver statute, when that is what it intends. Twenty years before USERRA was enacted, Congress included a non-waiver provision that targeted pieces of a contract in the National Mobile Home Construction and Safety Standards Act of 1974, Pub. L. No. 93-383, 88 Stat. 633 (codified as amended at 42 U.S.C. § 5401 et seq. (2012)). There, Congress limited the effect of the statute's non-waiver provision to "any provision of a contract or agreement" that purported to limit the rights of mobile home purchasers under the Act. 42 U.S.C. § 5421 (emphasis added). Despite knowing how to limit the scope of a non-waiver provision, Congress chose not to in USERRA, and we should understand that choice as deliberate. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. __, __, 133 S. Ct. 2517, 2529 (2013). Congress plainly said the statute supersedes "contract[s]" and "agreement[s]" that reduce USERRA rights.[2]

I read the text of § 4302(b) to be unambiguous, so our inquiry should end there. The majority, on the other hand, appears to view § 4302(b) as ambiguous

---

[2] To the extent the majority interprets § 4302(b) the way it does out of worry about creating a conflict between USERRA and the FAA, this fear is unfounded. If § 4302(b) means what it says, the arbitration agreement at issue in this case is void. Without an arbitration agreement, the FAA is irrelevant. See Breletic v. CACI, Inc.–Fed., 413 F. Supp. 2d 1329, 1337 (N.D. Ga. 2006). And there is no reason to treat arbitration agreements differently from any other "contract [or] agreement" that would be superseded by § 4302(b) because, as the majority points out, the FAA places arbitration agreements on an equal footing with all other contracts. The FAA neither elevates arbitration agreements to a special status nor removes them from the reach of the law.

18

based on different dictionary definitions of the word "supersede."[3]  Specifically,

the majority reasons that because "supersede" is defined as "replacing one thing

with another," § 4302(b) cannot mean what it says without "leav[ing] critical gaps

in the employer-employee relationship."  Instead, the majority reasons that

Congress must have intended for § 4302(b) to preempt only the pieces of a contract

or agreement that violate USERRA.  But the Supreme Court has cautioned that we

should "decline to manufacture ambiguity where none exists."  United States v.

Culbert, 435 U.S. 371, 379, 98 S. Ct. 1112, 1116 (1978).  Section 4302(b)'s use of

the word "supersede" does not render the statute ambiguous so as to allow for

speculation about Congress's desired (but not expressed) intent.

I am not persuaded by the majority's explanation about why "supersede"

cannot be read to mean the entire illegal contract or agreement is replaced with

USERRA provisions.  The majority mentions "critical gaps" this reading would

leave in the employment relationship, but it does not specify what those gaps are or

how they would harm veterans' USERRA rights.[4]  Something as fundamental as

---

[3] In fairness, the majority never says that § 4302(b) is ambiguous, but its interpretation looks past the plain text in favor of accomplishing congressional intent and policy goals.  For that reason, I understand the majority to see § 4302(b) as ambiguous.  Cf. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (quotation omitted)).  If the majority thought § 4302(b) unambiguously superseded only the illegal pieces of a contract, the opinion would presumably point to where the statute says that.  It does not.

[4] Neither does the majority address the possibility of superseding just the arbitration agreement within the employment contract.  Both of the illegal contract terms here are contained within a separately delineated arbitration agreement.  And the Supreme Court has applied

19

pay can serve as an example.  Even if an illegal employment contract contained pay terms that were superseded along with the rest of the contract under my reading of § 4302(b), there are other ways to ascertain what pay the veteran is entitled to.  See, e.g., 20 C.F.R. § 1002.193(a) (noting that sources of pay information under USERRA "include agreements, policies, and practices in effect at the beginning of the employee's service"); id. § 1002.236(a) (noting that predicted pay raises under USERRA may be ascertained from the "employee's own work history . . . and the work and pay history of employees in the same or similar position").  With this in mind, I am not able to see what "critical gaps" would impair a veteran's rights under a plain-language reading of § 4302(b).

My reading of § 4302(b) is supported by a neighboring provision, 38 U.S.C. § 4302(a), which saves any "more beneficial" rights provided to a veteran in a contract from being superseded by USERRA.  Section 4302(a) is a savings clause that stops USERRA from throwing out contract rights more beneficial to veterans while invalidating the rest of the illegal contract.  The majority cites this savings clause to support its interpretation of § 4302(b), but it actually undermines the majority's position.  That's because the majority's interpretation of § 4302(b) renders the savings clause superfluous.  Specifically, if the majority is right that

USERRA's predecessor statutes to preempt separate agreements within contracts.  See, e.g., McKinney v. Mo.-Kan.-Tex. R.R. Co., 357 U.S. 265, 268–70, 78 S. Ct. 1222, 1225–26 (1958) (allowing a veteran to avoid a grievance agreement contained within his collective bargaining contract, but not invalidating the collective bargaining contract).

§ 4302(b) does away with only the <u>illegal pieces</u> of a contract, then there will never be any "more beneficial" contractual rights for § 4302(a) to step in and save. A piece of a contract that is illegal under USERRA cannot be "more beneficial" than USERRA. Thus, the majority's interpretation of § 4302(b) leaves no role for its companion clause, § 4302(a). Courts must be "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." <u>Mackey v. Lanier Collection Agency & Serv., Inc.</u>, 486 U.S. 825, 837, 108 S. Ct. 2182, 2189 (1988).

On the other hand, a plain-language reading of § 4302(b) does leave a role for its companion clause. When an entire contract is superseded under § 4302(b), the savings clause steps in to preserve any "more beneficial" rights granted to the veteran by the contract. This calibrates the scope of § 4302(b) to maximize veterans' rights under USERRA. Thus, reading § 4302(b) to supersede entire contracts and agreements not only adheres to the unambiguous text, but it also ensures that § 4302(a) continues to work together with § 4302(b). The majority's interpretation does not.

B.    History and Purpose

Though we need not look beyond the unambiguous text of § 4302(b), a review of USERRA's legislative history and purpose reinforces the plain-language reading. A House report for USERRA stated: "Section 4302(b) would reaffirm a

21

general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under [USERRA]." H.R. Rep. No. 103-65, at 20 (1993) (emphasis added). Section 4302(b)'s preemptive effect was thus described as "general" and understood to apply to entire "agreements" with employers, not just certain pieces of those agreements. And the House stressed that "the extensive body of case law" related to the veterans' rights statutes preceding USERRA would "remain in full force and effect." Id. at 19. This includes Fishgold's command that every provision of a veterans' rights statute be given "as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." 328 U.S. at 285, 66 S. Ct. at 1111. The majority's narrow, extra-textual reading of § 4302(b) is anything but a liberal construction of USERRA.

It seems to me that USERRA's purpose of vigorously protecting veterans' rights is better served by superseding more than just the illegal terms (though not any "more beneficial" terms), because doing so deters employer overreaching. Under the majority's interpretation of § 4302(b), employers will have nothing to lose by including illegal terms in their contracts—even if a legally learned veteran does recognize the illegal terms as such (hardly a foregone conclusion), the worst that can happen to the employer is delicate removal of only the illegal terms.[5]

---

[5] And as will be discussed in Part II, the majority casts even that result into doubt.

22

Here, for example, the defendants will still get to arbitrate Mr. Bodine's case even though they drafted an arbitration agreement that infringed on his USERRA rights. The employer suffers no penalty for its bad drafting. The majority's interpretation means that even when employers don't get the unfair benefit of their illegal terms because employees like Mr. Bodine recognize the terms' illegality, USERRA will do nothing to dissuade employers from continuing to use those illegal terms in the future. This result surely does not "provide the greatest benefit to our servicemen and women," as the majority says.

## II.

The majority erodes veterans' rights still further by giving the defendants more than they asked for. The defendants acknowledge that certain provisions of the arbitration agreement violate USERRA. Even so, the majority opinion gives them an unrequested second chance to apply these admitted illegal contract terms. Specifically, I refer to two illegal terms in the defendants' arbitration agreement, which the majority calls the "fee term" and the "statute of limitations term." This fee term states that Mr. Bodine must pay up to $150 in arbitration costs, any fees and costs the arbitrator apportions to him, as well as the costs associated with mandatory mediation. This fee term directly violates USERRA. See 38 U.S.C. § 4323(h)(1) ("No fees or court costs may be charged or taxed against any person claiming rights under [USERRA]."). The statute of limitations term sets a six-

23

month limitations period for any claim related to Mr. Bodine's employment contract. The statute of limitations term also directly violates USERRA. See 38 U.S.C. § 4327(b) ("Inapplicability of statutes of limitations—If any person seeks to file a complaint or claim . . . alleging a violation of [USERRA], there shall be no limit on the period for filing the complaint or claim.").

Throughout this case, the defendants have not disputed that these contract terms violate USERRA, and as such they have tried to nullify the terms' effect. The defendants told the District Court:

> [B]ecause [we] will voluntarily waive the [statute of limitations] defense . . . , the provision purporting to limit the statute of limitations in the arbitration agreement, as applied, is of no force or effect, and places no substantive limitation on the Plaintiff's USERRA rights. . . . [We also] agree to bear any and all costs associated with any arbitration, mediation, or negotiation of this matter. . . . Therefore, because the Plaintiff is not required to bear any unreasonable fees to arbitrate this matter, there are no substantive restrictions on the Plaintiff's USERRA rights.

The District Court accepted the defendants' concession that these terms are illegal, as well as the defendants' willingness to nullify their effect. The court severed the illegal terms on that basis. In arguing before this Court, the defendants asked us to affirm the District Court because it was "authorized to blue-pencil this agreement in a way [so] that it does not . . . diminish any rights under USERRA." So the defendants still don't dispute that the fee and statute of limitations terms in the

arbitration agreement violate USERRA.  Indeed the defendants were wise not to dispute this, because these contract terms do clearly violate the statute.

The majority opinion nonetheless reverses the District Court on this ground and gives the defendants another "opportunity to present their arguments regarding the validity of the terms" before an arbitrator.  I say the terms' illegality under USERRA was not disputed before, and cannot seriously be disputed now.[6]  Yet the majority opinion reaches out and takes away not just the federal courts' ability to supersede illegal "contract[s]" or "agreement[s]" (as the statute says), but the courts' ability to supersede even the clearly illegal pieces of those contracts.  This is a bridge too far.  Under the majority's decision today, an employer can insert a boilerplate arbitration agreement into its employment contract—no matter whether that agreement is legal—and federal courts will be essentially divested of authority to enforce USERRA.[7]  Surely Congress did not intend for federal courts to be so easily and completely deprived of authority to enforce USERRA when an agreement contains blatantly illegal terms.  Veterans' rights statutes preceding

---

[6] Maybe the majority understands the defendants' sudden use of "purportedly" whenever they mention the terms' illegality in their appellate brief to mean that the issue is disputed.  I don't think this wordsmithing changes the concessions the defendants made to the District Court, which that court relied on.

[7] While the arbitrator's decision could conceivably come before the courts on a motion to vacate, see 9 U.S.C. § 10, "courts may vacate an arbitrator's decision only in very unusual circumstances," Oxford Health Plans LLC v. Sutter, 569 U.S. __, __, 133 S. Ct. 2064, 2068 (2013) (quotation omitted).  These very unusual circumstances do not include the arbitrator's commission of "error—or even a serious error."  Id. (quotation omitted).  Instead, motions to vacate concern things like fraud, corruption, and misconduct.  See 9 U.S.C. § 10(a).

25

USERRA stretch back to World War II and "provide[] the mechanism for manning the Armed Forces of the United States." Ala. Power Co. v. Davis, 431 U.S. 581, 583, 97 S. Ct. 2002, 2004 (1977); see also Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1235 (11th Cir. 2005) (noting that USERRA and its predecessor statutes were intended to "bolster the morale of those serving their country" (quotation omitted)).  Veterans' rights statutes thus occupy a domain of special national importance, and our courts should not lightly be stripped of the power to enforce them.

Under the majority's decision, the worst to happen to overreaching employers will be a delicate removal of just their illegal terms.  Veterans, on the other hand, may lose their USERRA rights without redress.  Take, for example, a fee term like the one here.  A veteran might be forced to pay mandatory mediation and arbitration fees before she can prove (and if she can prove) to an arbitrator that USERRA has been violated.[8]  In conjunction with the majority's narrow, extra-textual interpretation of § 4302(b), its decision to undo the District Court's severance of the clearly illegal terms walks back veterans' rights rather than protecting them.

---

[8] Even if some veterans can eventually prove to an arbitrator that illegal terms violate USERRA, damage will have already been done.  In McKinney, the Supreme Court expressed concern at the idea that veterans would be delayed in vindicating their rights, and said that delay "might often result in hardship to the veteran and the defeat, for all practical purposes, of the rights Congress sought to give him."  357 U.S. at 270, 78 S. Ct. at 1226.  The Court said delay would contradict "the liberal procedural policy clearly manifested in the statute for the vindication of [veterans'] rights."  Id.

26

\*      \*      \*

This is an important case about a relatively novel issue.  How we resolve it affects not only veterans' rights, but how employers regard those rights.  I read the majority's interpretation of § 4302(b) to contradict the plain text of the statute in a way that fails to preserve § 4302(a)'s saving effect and could also foster employer overreaching.  I worry also that the majority opinion will strip federal courts of not just the power to supersede "contract[s]" or "agreement[s]," but also the power to supersede pieces of contracts acknowledged to be illegal.  USERRA is meant to give special protections to our veterans, and the majority opinion dilutes those protections.  I respectfully dissent.

**APPENDIX**

The Contract reads in pertinent part:

VII.

ALTERNATIVE DISPUTE RESOLUTION

THE PARTIES TO THIS AGREEMENT HEREBY EXPRESS THAT, EXCEPT AS SET FORTH BELOW, ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN THE PARTIES HERETO, ARISING OUT OF OR IN ANY WAY RELATED TO THE WITHIN AGREEMENT, ITS INTERPRETATION, PERFORMANCE OR BREACH, SHALL BE RESOLVED EXCLUSIVELY BY THE FOLLOWING ALTERNATE DISPUTE RESOLUTION ("ADR") MECHANISMS:

A. Negotiation — The parties hereto shall first engage in a good faith effort to negotiate any such controversy . . . .

B. Should the above-stated negotiations be unsuccessful, the parties shall engage in mediation . . . .

C. Should the above-stated mediation be unsuccessful, the parties agree to arbitrate any such controversy or claim with the express understanding that this Agreement is affected by interstate commerce . . . . The arbitration shall be conducted pursuant to the Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") or such other arbitration rule as the parties may otherwise agree to choose.

D. The Employee shall pay no more than $ 150 in arbitration costs.  However, the parties agree that the arbitrator may as part of his final decree reapportion the fees, including attorney's fees, and costs between the parties as allowed by applicable law.

Notwithstanding any other provision of this Article to the contrary, in the event a party may desire to seek interim relief, whether affirmative or prohibitive, in

28

the form of a stay or motion to compel arbitration . . . such party may initiate the appropriate litigation to obtain such relief ("Equitable Litigation").  Nothing herein shall be construed to suspend or terminate the obligation of both parties promptly to proceed with the ADR procedures concerning the subject of such Equitable Litigation while such Equitable Litigation and any appeal therefrom is pending.

To the extent that a court of competent jurisdiction should determine that the provisions of the Federal Arbitration Act are not applicable to this Agreement, the parties hereto nevertheless agree to arbitrate under the provisions of Alabama law, the measure or amount of damages to which either of the parties may be entitled.  Such arbitration shall be conducted pursuant to the Arbitration Rules.

The parties intend that this Article VII shall encompass and embody the broadest range of matters that may be arbitrated under federal law.  The parties further agree that any question as to the scope of this Article VII shall, to the extent permitted by law, be determined by the arbitrator (including, without limitation, issues of unfairness, capacity, waiver, unconscionability and so forth).

. . . .

## VIII.
## MISCELLANEOUS

. . . .

B. Both the Employer and the Employee mutually agree that the covenants and restrictions contained in Article V and Article VI above, or any of their respective subparts, are separate and severable, and the unenforceability of any specific covenant shall not affect the validity of any other covenant set forth herein.  If any term or provision of this Agreement shall be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the

29

fullest extent and the broadest application permitted by law. . . .

. . . .

D. Neither this Agreement nor any of the terms and provisions hereof, including, without limitation, the provisions of the preceding Article, may be waived or modified in whole or in part, except by written instrument signed by an officer of the Employer expressly stating that it is intended to operate as a waiver or modification of this Agreement. . . .

. . . .

G. It is acknowledged by the Employer and the Employee that the place of this contract and its status is in the County of Morgan, State of Alabama. The Employer and the Employee expressly agree that federal law and the laws of the State of Alabama shall govern the validity, construction, interpretation, and effect of this Agreement, or any provision thereof.